**CITY OF WACO, Petitioner,**

v.

**Debra KIRWAN, Individually and as Representative of the Estate of Brad McGehee, Deceased, Respondent.**

No. 08–0121.

Supreme Court of Texas.

Argued Feb. 3, 2009.

Decided Nov. 20, 2009.

**620**

Charles D. Olson, C. Alfred MacKenzie, Haley & Olson, P.C., Waco, TX, for Petitioner.

Jeffery Mundy, Michael C. Singley, Mundy & Singley, LLP, Austin, TX, for Respondent.

David S. Morales, Danica Lynn Milios, Office of Attorney General of Texas, Austin, TX, for Amicus Curiae The State of Texas.

Ramon G. Viada III, Viada & Strayer, The Woodlands, TX, for Amicus Curiae Texas Municipal League.

Justice GREEN delivered the opinion of the Court, in which Justice HECHT, Justice O'NEILL, Justice WAINWRIGHT, Justice MEDINA, Justice JOHNSON, Justice WILLETT, and Justice GUZMAN joined as to Parts I–V, and in which Chief Justice JEFFERSON joined as to Part IV.

The recreational use statute, when applicable, "raises the burden of proof [in a premises liability case] by classifying the recreational user of [government]-owned property as a trespasser and requiring proof of gross negligence, malicious intent, or bad faith" on the part of the governmental unit. *State v. Shumake*, 199 S.W.3d 279, 281 (Tex.2006). But if the law imposes no duty upon the landowner with respect to the allegedly dangerous condition, then this burden of proof does not come into play. In this case, we consider whether a landowner owes a duty, under the recreational use statute, to recreational users to warn or protect recreational users against the danger of a naturally occurring condition or otherwise refrain from gross negligence with respect to the condition. We hold, consistent with the purpose of the statute, that a landowner generally owes no such duty, and therefore reverse the court of appeals' judgment and dismiss the case with prejudice.

I

On April 24, 2004, college student Brad McGehee was watching boat races in Cameron Park, a municipal park located in the City of Waco. McGehee was sitting on top of a cliff in an area known as Circle Point, when the plaintiffs allege the solid rock ground collapsed underneath him, causing him to fall approximately sixty feet to his death. Rusty Black, Municipal Services Director for the City of Waco, swore in an affidavit that the cliff was a naturally occurring cliff consisting of loose rock and natural cracks, that it was not created by the City of Waco, nor had the City altered, modified, or excavated the limestone cliff beyond the stone wall in front of the cliff. Attached to his affidavit were photographs of the cliff, which clearly demonstrate that the cliff is a natural condition altered only by nature. The photographs show a rock wall constructed by the City situated in front of the cliff, accompanied by a sign warning, "FOR YOUR SAFETY DO NOT GO BEYOND WALL." McGehee had crossed the wall and was beyond the warning sign when he fell to his death. There was no evidence that the City modified the cliff from which McGehee fell in any way.

On February 4, 2005, Debra Kirwan, individually and as representative of the Estate of Brad McGehee, filed a premises liability suit against the City of Waco, alleging that McGehee's death was proximately caused by the gross negligence of the City, thus waiving the City's immunity against suit and liability under the Texas Tort Claims Act. After the original petition was filed, the parties agreed to abate the case until this Court issued its decision in *State v. Shumake*, 199 S.W.3d 279 (Tex. 2006)—a case which addressed the recreational use statute. Following the *Shumake* decision, Kirwan filed an amended petition, alleging that McGehee's death and Kirwan's damages were directly and proximately caused by the gross negligence of the City of Waco in connection with the condition of its real property. *See Shumake*, 199 S.W.3d at 287 (defining gross negligence as "an act or omission involving subjective awareness of an extreme degree of risk, indicating conscious indifference to the rights, safety, or welfare of others"). As evidence of the City's subjective awareness of the cliff's alleged extreme degree of risk, Kirwan relied on a student report, which had been submitted to the City, and had warned of falling rocks in Cameron Park and had recommended the use of warning signs. As evidence of the City's alleged conscious indifference to these risks, Kirwan cited the lack of any sign specifically warning of the risk of fatality resulting from the condition of the Cameron Park premise and evidence showing that despite the fact that other park patrons had died or been seriously injured by the condition of the premises, the City continued to allow park patrons into the areas with the unstable rock.

The City responded by filing a Second Amended Plea to the Jurisdiction, arguing that Kirwan's pleadings affirmatively ne-

gated the court's jurisdiction, or, in the alternative, that the undisputed evidence established a lack of jurisdiction. Specifically, the City relied on *Shumake* to argue that, as a matter of law, a landowner may not be grossly negligent for failing to warn of the inherent dangers of nature. The trial court agreed and signed an order dismissing the case against the City.

A divided court of appeals reversed the trial court's judgment and remanded, reasoning that "[w]e do not read *Shumake* to suggest that all natural conditions are *per se* open and obvious or that a natural condition may *never* serve as the basis for a premises defect claim"; instead, it held that "the recreational use statute permits premises defect claims based on natural conditions as long as the condition is not open and obvious and the plaintiff furnishes evidence of the defendant's alleged gross negligence." 249 S.W.3d 544, 552 (emphasis in original).[1] The court of appeals then concluded that Kirwan's pleadings and evidence raised fact issues as to the City's alleged gross negligence. *Id.* at 557. We granted the City's petition for review to determine whether, under the recreational use statute, a landowner owes a duty to warn or protect recreational users against the dangers of naturally occurring conditions. 52 Tex. Sup.Ct. J. 122 (Tex. Nov. 21, 2008).

## II

A plea to the jurisdiction seeks to dismiss a case for want of jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226–27 (Tex.2004). When reviewing whether a plea was properly granted, we first look to the pleadings to determine if jurisdiction is proper, construing them liberally in favor of the plaintiffs and looking to the pleader's intent. *Id.* at

---

1. Chief Justice Gray dissented, without issuing a separate opinion. *Id.*

226. The allegations found in the pleadings may either affirmatively demonstrate or negate the court's jurisdiction. *Id.* at 226–27. If the pleadings do neither, it is an issue of pleading sufficiency and the plaintiff should be given an opportunity to amend the pleadings. *Id.* "However, if a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised," even where those facts may implicate the merits of the cause of action. *Id.* at 227. If that evidence creates a fact issue as to the jurisdictional issue, then it is for the fact-finder to decide. *Id.* at 227–28. "However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law." *Id.* at 228. In considering this evidence, we "take as true all evidence favorable to the nonmovant" and "indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Id.*

The City claims Kirwan's pleadings affirmatively negate the trial court's jurisdiction because she failed to allege the City was grossly negligent "in creating a condition that a recreational user would not reasonably expect to encounter on the property in the course of permitted use." *Shumake*, 199 S.W.3d at 288. Alternatively, the City argues that, even if the pleadings do not affirmatively negate jurisdiction on their face, then the undisputed evidence establishes as a matter of law a lack of jurisdictional facts to support a waiver of governmental immunity. Both arguments present the question of whether, under the recreational use statute, a landowner owes a duty to warn or protect recreational users against the dangers of naturally occurring conditions on the landowner's property. The City argues that

we answered this question in *Shumake*, where we stated:

> [W]e do not hold, or even imply, that a landowner may be grossly negligent for failing to warn of the inherent dangers of nature. A landowner has no duty to warn or protect trespassers from obvious defects or conditions. Thus, the owner may assume that the recreational user needs no warning to appreciate the dangers of natural conditions, such as a sheer cliff, a rushing river, or even a concealed rattlesnake. But a landowner can be liable for gross negligence in creating a condition that a recreational user would not reasonably expect to encounter on the property in the course of the permitted use.

199 S.W.3d at 288 (citations omitted). Kirwan and the court of appeals disagree, arguing that this statement addressed open and obvious conditions only, and that *Shumake* merely provided examples of open and obvious conditions which happen to be naturally occurring. We agree that, while *Shumake* may have provided some guidance, it did not directly answer the question presented here. The condition in *Shumake* was not a naturally occurring one. *See id.* at 281 (addressing liability for danger from man-made culvert). Here, however, the facts present a condition alleged to be both natural and not open and obvious. Thus, the question left open by *Shumake* is properly before us.

## III

### A

Under the Texas Tort Claims Act, the government waives immunity from suit to the extent of liability under the Act. TEX. CIV. PRAC. & REM.CODE § 101.025. The government is liable under the Act for "personal injury and death so caused by a condition ... of ... real property if the governmental unit would, were it a private

person, be liable to the claimant according to Texas law." *Id.* § 101.021(2). The Act also sets the duty owed in premises liability cases: "[i]f a claim arises from a premise defect, the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property, unless the claimant pays for the use of the premises." *Id.* § 101.022(a). However, the recreational use statute, applicable here, modifies this duty further, setting the standard as that owed to a trespasser. *Id.* § 75.002(c)(2). We recognized in *Shumake*, however, that although the recreational use statute references a trespasser standard, it actually creates a specialized standard of care, one not exactly consistent with the common-law trespasser standard. 199 S.W.3d at 286–87. This specialized standard dictates that landowners must refrain from gross negligence, or from acting with malicious intent or in bad faith. *Id.;* TEX. CIV. PRAC. & REM.CODE § 75.002(d). Gross negligence is not defined in the statute, so we apply its commonly-accepted legal meaning, which is "an act or omission involving subjective awareness of an extreme degree of risk, indicating conscious indifference to the rights, safety, or welfare of others." *Shumake*, 199 S.W.3d at 287 (citing cases and TEX. CIV. PRAC. & REM.CODE § 41.001(11)).

■ As with negligence actions, *see, e.g., Gen. Elec. Co. v. Moritz*, 257 S.W.3d 211, 217 (Tex.2008), a defendant may be liable for gross negligence only to the extent that it owed the plaintiff a legal duty. *See Shumake*, 199 S.W.3d at 287–88 (discussing "under what conditions a failure to guard or warn against a dangerous condition may be considered grossly negligent, malicious or willful"); *Morris v. Tex. Parks & Wildlife Dep't*, 226 S.W.3d 720, 727 (Tex.App.-Corpus Christi 2007, no pet.) (examining whether park owed a duty, under recreational use statute, to

ensure the safety of a campsite). For example, we have held that "[a] landowner has no duty to warn or protect trespassers from obvious defects or conditions." *Shumake*, 199 S.W.3d at 288; *see also Stephen F. Austin State Univ. v. Flynn*, 228 S.W.3d 653, 659–60 (Tex.2007). We have discussed, but never fully addressed, whether a duty arises with respect to natural conditions, whether they be open and obvious or not. *See Shumake*, 199 S.W.3d at 288 ("[W]e do not hold, or even imply, that a landowner may be grossly negligent for failing to warn of the inherent dangers of nature."); *Miranda*, 133 S.W.3d at 234 (Jefferson, J., dissenting) ("Texas law does not impose on landowners a duty to warn trespassers about all conceivable dangers inherent in nature.") (emphasis removed).

If we apply common-law principles with regard to trespassers, the answer to this question is that the landowner owes no duty to warn or protect against natural conditions. *See Shumake*, 199 S.W.3d at 285–86 (discussing limited exception to common-law trespasser rule where the landowner created a dangerous condition); *see also, e.g.,* RESTATEMENT (SECOND) OF TORTS §§ 333–339 (1977) (stating general rule of no liability to trespassers, but providing limited exceptions for activities, controllable forces, and artificial conditions). But, as explained in *Shumake*, the common-law trespasser standard does not dictate the answer to this duty question. 199 S.W.3d at 286–87. Instead, the statutory standard controls. *Id.* And, while it does not wholly adopt the common-law trespasser standard, it does adopt the common-law gross negligence standard. *Id.* Thus, we refer to our traditional, common-law duty analysis, "consider[ing] 'several interrelated factors, including the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the conse-

quences of placing the burden on the defendant.'" *Edward D. Jones & Co. v. Fletcher,* 975 S.W.2d 539, 544 (Tex.1998) (quoting *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990)). However, unique to this analysis is the fact that liability here is premised on a statute; therefore, we must be especially mindful of its text and purpose. *See F.F.P. Operating Partners, L.P. v. Duenez,* 237 S.W.3d 680, 683–84 (Tex.2007) (applying statutory construction principles when considering legislatively-created duty owed by alcohol providers to third parties).

**B**

■ Nature is full of risks and it is certainly foreseeable that human interaction with nature may lead to injuries and possibly even death. Our state parks and lands are covered by numerous potentially dangerous natural conditions: cliffs; caves; waterfalls; swamps and other wetlands; mountains and canyons; surf; and various animals and creatures. Landowners likely know of the types of animals and natural formations on their property, and will no doubt, as a general rule, foresee the risks which will accompany human interaction with these natural conditions. Reasonable recreational users who choose to visit a property for recreational purposes will also have, or in the very least should have, awareness of the inherent risks involved in interacting with nature. *See Shumake,* 199 S.W.3d at 288 ("[An] owner may assume that the recreational user needs no warning to appreciate the dangers of natural conditions...."). Therefore, the risks inherent in a natural condition will ordinarily be foreseeable not only to the landowner but to the recreational user as well. This is especially true where a natural condition is of the sort one would reasonably expect to find on a property. *Id.*

A cliff, like the one here, is the sort of dangerous natural condition that both a landowner and recreational user could foresee would pose a risk. Indeed, the City had erected a wall and posted a sign warning visitors to stay away from the cliff's edge. The cliff also consisted of loose rocks and cracks that would have been visible to any patron who stood at its edge. However, even assuming that the particular risk at the cliff's edge—the alleged crumbling of a large section of the cliff—was not necessarily foreseeable, the general risk of a cliff's edge is. *See Walker v. Harris,* 924 S.W.2d 375, 377 (1996) ("Foreseeability requires only that the general danger, not the exact sequence of events that produced the harm, be foreseeable."); *Lofton v. Tex. Brine Corp.,* 777 S.W.2d 384, 387 (Tex.1989).

■ While foreseeability of the risk "is the foremost and dominant consideration," *Greater Houston Transp. Co.,* 801 S.W.2d at 525 (internal quotations omitted), "foreseeability alone is not sufficient to justify the imposition of a duty," *Golden Spread Council, Inc. v. Akins,* 926 S.W.2d 287, 290–91 (Tex.1996). We must consider other factors, including the likelihood of injury and the burden of imposing a duty of care. *See Tex. Home Mgmt., Inc. v. Peavy,* 89 S.W.3d 30, 33 (Tex.2002) (observing that question of legal duty is multifaceted and requires a balance of several factors). The likelihood of harm where a natural condition is concerned will inevitably vary depending on the location and type of condition. For example, if a coastal area possesses a severe undertow, the likelihood of harm would be great. The likelihood would increase if the area was heavily populated by tourists wishing to swim in the water. The likelihood of harm at a cliff's edge, and in particular the cliff in this case, has the potential to be great as well—a cliff is an inherently dangerous

condition. However, while some evidence showed the existence of past injuries at the cliffs in Cameron Park, none appeared to have involved a large piece of earth falling from a cliff as allegedly happened in this case, or even a rock fall in general. Benjamin Samarripa, Captain of the City of Waco Fire Department and the emergency first responder to the scene of the accident, testified that he was aware of six incidents involving falls from the cliffs in Cameron Park, including the incident involving McGehee, but was not aware of any other injuries caused by crumbling rocks.[2] However, Samarripa did testify that along the trails one could see where rocks had fallen over the years. Kirwan additionally offered as evidence a report by a Baylor University student which detailed the possibility of rock falls at Cameron Park, but the report did not concern the possibility of a person actually falling from the top of a cliff due to a cliff losing a section of its edge. Instead, the report concerned the danger to pedestrians on trails below due to rocks falling from the cliffs. Still, in the aggregate, the evidence shows that the likelihood of harm at the cliff's edge was significant, which is why the City had posted a sign warning visitors to stay away from the cliff's edge.

Finally, we consider the public policy implications of imposing a duty of care on the City. *Peavy,* 89 S.W.3d at 39. In so doing, we balance the social utility of the City's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the City, against the risk, foreseeability, and likelihood of harm. *Fletcher,* 975 S.W.2d at 544; *see also* PROSSER AND KEETON ON THE LAW OF TORTS (W. Page Keeton, et. al.

eds., 5th ed.1984) § 32, at 173 ("It ... is fundamental that the standard of conduct which is the basis of the law of negligence is usually determined upon a risk-benefit form of analysis: by balancing the risk, in the light of the social value of the interest threatened, and the probability and extent of the harm, against the value of the interest which the actor is seeking to protect, and the expedience of the course pursued."). We must consider what actions a landowner, such as the City, must take to avoid showing "conscious indifference to the rights, safety, or welfare of others." *Shumake,* 199 S.W.3d at 287. As a practical matter, landowners would err on the side of avoiding obvious harm to others from dangers on their property by posting a sign, fencing off an area, or closing the area altogether. But these actions, while desirable in many contexts, do not generally comport with the purpose of the recreational use statute, which is to encourage landowners to make their lands available to visitors. *See Shumake,* 199 S.W.3d at 284; *Flynn,* 228 S.W.3d at 658.

It is generally unreasonable and unduly burdensome to ask a landowner to seek out every naturally occurring condition that might be dangerous and then warn of the condition or make it safe. In most circumstances, the magnitude of the burden in requiring a landowner to make perfectly safe, or post signs warning of, every potentially dangerous naturally occurring condition on his property would be immense. For example, must a landowner provide signs along every stretch of beach warning of the dangers of the surf? Or post warnings throughout Big Bend Ranch State Park concerning the dangers of rat-

---

2. Samarripa testified that three of the other falls involved park patrons either jumping from the cliffs or falling while attempting to climb the cliffs. He did not explain the manner in which the other two falls occurred.

Rusty Black additionally testified that he was aware of four incidents where falls had occurred at the cliffs at Cameron Park. However, he did not explain the circumstances of these incidents.

tlesnakes and mountain lions? As a matter of policy, we would hope that a landowner would err on the side of safety by warning visitors of an especially dangerous natural condition he is aware of on his property. But, when considering whether the landowner owes a duty of care in determining liability under the statute, the magnitude of this sort of burden will generally outweigh the foreseeability of the risk of harm where the condition is naturally occurring.

This is not to say that the risk of harm may never outweigh the burden of imposing a duty of care on landowners to warn or protect others against the dangers of natural conditions on the land. In the instant case, one could reasonably expect a cliff to impose a risk of harm: a "recreational user needs no warning to appreciate the dangers of natural conditions, such as a sheer cliff, a rushing river, or even a concealed rattlesnake." *Shumake,* 199 S.W.3d at 288. The loose rocks and cracks at the cliff's edge could have alerted a recreational user of the possibility of crumbling rocks. Moreover, it would be obvious to reasonable recreational users that many cliffs have the potential to crumble. The risk of harm was therefore foreseeable not just to the City but to McGehee as well. However, we can envision a circumstance where a landowner knows of a hidden and dangerous natural condition that is located in an area frequented by recreational users, where the landowner is aware of deaths or injuries related to that particular condition, and where the danger is such that a reasonable recreational user would not expect to encounter it on the property. In those circumstances, the foreseeability and likelihood of the risk of harm might outweigh the burden of imposing a duty of care on the landowner. But such a situation is not present in this case.

The recreational use statute was enacted to encourage government and private parties to open their land to the public. *See Flynn,* 228 S.W.3d at 658. It expressly provides that the landowner does not "assure that the premises are safe for [recreational] purpose[s]." Tex. Civ. Prac. & Rem.Code § 75.002(c)(1). The Legislature, through the recreational use statute, sought to encourage landowners to open their lands to the public by limiting their potential liability. We must respect that legislative decision and apply the statute to this case in a manner that furthers that policy. Thus, we hold that a landowner, lessee, or occupant, under the recreational use statute, does not generally owe a duty to others to protect or warn against the dangers of natural conditions on the land, and therefore may not ordinarily be held to have been grossly negligent for failing to have done so.

### C

Kirwan argues that, in *Miranda,* we implicitly held that a claim may be premised on an injury caused by a naturally occurring condition. *See Miranda,* 133 S.W.3d at 229–30 (alleging Department of Parks and Wildlife was grossly negligent where it failed to warn or protect against falling branches). As stated above, we agree that a claim may be premised on an injury caused by a naturally occurring condition under limited circumstances. However, we hold today that, under the recreational use statute, a landowner generally owes no duty where a claim is premised on an injury caused by a naturally occurring condition. We do not believe that this holding runs afoul of our holding in *Miranda. See id.* at 221. First, we did not directly address the duty question in *Miranda. See id.* Moreover, only a plurality of the Court joined the part of the opinion which held that Miranda alleged sufficient facts for a gross negligence claim under the

recreational use statute. *Id.* at 220, 229–31 (Part III.C.1.).

## D

As discussed above, we do not hold that a party may never be liable for gross negligence related to a natural condition—under some circumstances not present in this case, a landowner may be liable. While we have previously held that the recreational use statute imposes a duty with respect to artificially created conditions in many instances, *see Shumake,* 199 S.W.3d at 288, we do not strive today to define which conditions are transformed from "natural" to "artificial" due to a landowner's modifications. The facts here do not require it. Nor do we hold that a party may escape liability if it acts with malice or in bad faith, even if the conduct relates to a natural condition. Also, it is possible a duty may be imposed on a landowner who has undertaken affirmative acts related to natural conditions, such as recommending a certain area or assuring a patron as to the condition's safety. *See Torrington Co. v. Stutzman,* 46 S.W.3d 829, 837–38 (Tex.2000) (explaining standard for negligent undertaking claim); *Wilson v. Tex. Parks & Wildlife Dep't,* 8 S.W.3d 634, 636 (Tex.1999) (per curiam) (remanding for trial on undertaking theory where Department "put up signs around the park notifying visitors that they should leave the river area immediately whenever they heard the flood warning sirens," but then the siren failed to alert the plaintiffs of a flood).

The Legislature has left decisions about what size human footprint should be left on our state's lands to landowners, park rangers, and patrons. The recreational use statute imposes duties and liability in some instances as discussed above, but exhibits an overall policy choice to leave wild lands as they are and trust visitors to use reasonable caution.

## IV

■ We further emphasize that the City had constructed a wall and posted a prominent sign in front of the cliff stating, "FOR YOUR SAFETY DO NOT GO BEYOND WALL." As discussed above, the recreational use statute "requir[es] proof of gross negligence, malicious intent, or bad faith" on the part of the governmental unit in order to invoke liability. *Shumake,* 199 S.W.3d at 281. Kirwan alleged gross negligence. Even assuming that the City owed McGehee a duty, which we hold today that it did not, and assuming that the City knew of an "extreme degree of risk," we fail to see how the City showed "conscious indifference to the rights, safety, or welfare of others" as required under the statute. *See Shumake,* 199 S.W.3d at 287 (defining gross negligence as an act or omission involving subjective awareness of an extreme degree of risk, indicating conscious indifference to the rights, safety, or welfare of others). In previous opinions, we have held that what separates ordinary negligence and gross negligence is the defendant's state of mind—the plaintiff must show that the defendant knew about the risk, but the defendant's acts or omissions show that he did not care. *La.-Pac. Corp. v. Andrade,* 19 S.W.3d 245, 246–47 (Tex.1999). However, "some evidence of care does not defeat a gross-negligence finding." *Lee Lewis Constr., Inc. v. Harrison,* 70 S.W.3d 778, 785 (Tex.2001); *Gen. Motors Corp. v. Sanchez,* 997 S.W.2d 584, 595 (Tex.1999).

The wall and sign do not indicate simply "some evidence of care." *Harrison,* 70 S.W.3d at 785. Instead, the wall provided a barrier in front of the cliff to prevent patrons from accessing the cliff's edge, and the sign warned patrons to stay away from

the cliff by instructing them not to go beyond the wall. Kirwan contends that the sign was inadequate in that it failed to identify the particular hazard applicable to this case, namely the risk of fatality resulting from the condition of the Cameron Park premises. Kirwan also contends that the City demonstrated conscious indifference by continuing to allow park patrons into the areas with the unstable rock. For support, Kirwan cites various premises liability "adequacy of warning" cases under the Texas Torts Claims Act where the courts of appeals found a warning inadequate. *See, e.g., Tex. Dep't of Transp. v. Gutierrez,* 243 S.W.3d 127, 136 (Tex.App.-San Antonio 2007, no pet.); *State v. McBride,* 601 S.W.2d 552, 557 (Tex.Civ. App.-Waco 1980, writ ref'd n.r.e.). However, these cases did not construe gross negligence under the recreational use statute and did not concern naturally occurring conditions. Moreover, the City did not actually allow park patrons into the areas with the unstable rock; rather, the City had constructed a wall and posted a sign warning visitors not to enter the specific area of the cliff. Given that the purpose of the statute is to encourage landowners to open their land to recreational users, and the attendant burden of requiring landowners to warn of or make safe each naturally occurring condition on the land, we refuse to require a landowner who posts a sign warning of a natural condition to detail each possible dangerous scenario concerning that condition. This is especially the case where the landowner has also constructed a barrier around the condition. We do not intend to discourage landowners from posting detailed warning signs where necessary, but a barrier and a sign

warning a recreational user to stay away from a dangerous natural condition generally will be sufficient to avoid a showing of "conscious indifference to the rights, safety, and welfare of others" under the statute. Accordingly, we hold that Kirwan's pleadings and evidence fail to raise a fact question as to whether the City acted with conscious indifference.

**V**

We have determined that, with some exceptions that do not apply here, a landowner generally owes no duty under the recreational use statute to warn or protect against the dangers of natural conditions, and that the City did not owe McGehee a duty in this case. We have further determined that even if the City did owe McGehee a duty, the City was not grossly negligent. We now consider the City's plea to the jurisdiction. As discussed above, Kirwan's pleadings allege on their face that: "[McGehee] was watching boat races on the edge of a popular path in the park *sitting on solid ground,* which is open to the public and well and heavily used. Suddenly and without warning, the solid rock ground collapsed underneath him plunging [McGehee] more than 60 feet. . . ." This statement does not, in itself, affirmatively negate the trial court's jurisdiction. *See Miranda,* 133 S.W.3d at 226–27. However, the City also challenged the existence of jurisdictional facts, including whether the area where McGehee was sitting was an artificial condition created by the City.[3] Upon review of the jurisdictional evidence, which we discussed above, it is clear that the cliff upon which McGehee was sitting when he fell was a natural condition. The

**3.** The City did not file special exceptions or claim that the pleadings failed either to negate or demonstrate jurisdiction. *See Miranda,* 133 S.W.3d at 226–27 (holding that if the pleadings neither affirmatively demonstrate nor negate jurisdiction, "the issue is one of pleading sufficiency and the plaintiff should be afforded the opportunity to amend" the pleadings).

rock wall and sign situated in front of the cliff are man-made conditions, but they are not part of the cliff; the cliff from which McGehee fell was beyond the wall. Moreover, as discussed above, under some narrow circumstances a landowner might owe a duty to warn or protect against the dangers of a condition even where the condition is naturally occurring, but the undisputed facts of this case do not rise to that level. Finally, the evidence failed to show a factual dispute concerning the City's alleged "conscious indifference to the rights, safety, or welfare" of a recreational user at Circle Point: the City had built a rock wall in front of the cliff and posted a sign warning visitors not to go beyond the wall. Because the undisputed facts do not rise to the necessary level that waives the City's immunity from liability, neither, therefore, is its immunity from suit waived. *See* TEX. CIV. PRAC. & REM. CODE § 101.025.

\* \* \* \* \*

For these reasons, we reverse the court of appeals' judgment and dismiss the case with prejudice.