**Opinion issued April 15, 2014**



In The

# Court of Appeals

For The

# First District of Texas

---

## NO. 01-13-00401-CV

---

**NATIONAL PUBLIC FINANCE GUARANTEE CORPORATION AND MBIA INSURANCE CORPORATION, Appellants**

**V.**

**HARRIS COUNTY-HOUSTON SPORTS AUTHORITY AND HARRIS COUNTY SPORTS AND CONVENTION CORPORATION, Appellees**

---

**On Appeal from the 215th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2013-05829**

---

### O P I N I O N

National Public Finance Guarantee Corporation and MBIA Insurance

Corporation (collectively, "National") challenge the trial court's grant, based on

sovereign immunity, of two pleas to the jurisdiction filed by the Harris County-Houston Sports Authority (the "Sports Authority") and the Harris County Sports and Convention Corporation (the "Convention Corporation"). We reverse the trial court's grant of the Sports Authority's plea, and affirm the trial court's grant of the Convention Corporation's plea.

## Background

In 1997, Harris County and the City of Houston created the Sports Authority pursuant to Chapter 335 of the Local Government Code. *See* TEX. LOC. GOV'T CODE ANN. § 335.021 (West 2005) (a municipality may create a venue district under Chapter 335 to plan, acquire, establish, develop, construct, or renovate one or more venue projects in the district); TEX. LOC. GOV'T CODE ANN. § 335.023 (West 2005) (a district is a political subdivision of the creating political subdivision and of the state). Since its creation, the Sports Authority has issued several series of bonds pursuant to a written Indenture of Trust (collectively with all supplements and amendments, "Indenture") to finance the construction of sports venues in Harris County. The Indenture is an agreement between JPMorgan Chase Bank (later Chase Manhattan Bank) and the Sports Authority that governs the bonds. The Indenture provides that so long as any bonds remain outstanding, the Sports Authority shall, to the extent permitted by law, impose and collect the

revenues necessary to pay off the bonds and not impair its ability to collect the required revenues. The Indenture also provides for the creation of various accounts and a reserve account to hold funds securing the bonds, and specifies the priority of payments from these accounts.

The parties' dispute primarily concerns the Series 2001 bonds that were used to fund the construction of Reliant Stadium. The Convention Corporation is a local government entity created to serve as the landlord of Reliant Stadium. Contemporaneously with the issuance of the bonds, several agreements were executed:

- **The Funding Agreement:** The Sports Authority, the Convention Corporation, Houston NFL Holdings, LP ("the Texans"), and the Houston Livestock Show and Rodeo, Inc. ("the Rodeo") executed a Funding Agreement to describe the sources and uses of monies committed to the development of Reliant Stadium, including providing for the issuance of bonds and the raising of revenues to fund the bonds. The Funding Agreement provided that the "provisions for payment or application thereof in many instances are addressed more specifically in other Principal Project Documents or the Indentures." [1] It also provided that to the extent the terms of the Funding Agreement conflicted with the Indenture or the Lease Agreements (described below), the Indenture and the Lease Agreements, as appropriate, "shall control."

---

[1] The Funding Agreement defined the Principal Project Documents as: (1) this Funding Agreement, (2) the Lease Agreements, (3) the Existing Rodeo Lease, (4) the Project Agreement, (5) the Non-Relocation Agreement, (6) the License Agreements, (7) the Stadium Tri-Party Agreement, and (8) the Recognition and Attornment Agreements, as the same may be amended supplemented, modified, renewed, or extended from time to time in accordance with their respective terms.

3

- **The Texans Lease:** The Convention Corporation and the Texans executed a lease agreement, which governs the Texans' rental and use of Reliant Stadium.

- **The Rodeo Lease:** The Convention Corporation and the Rodeo executed a lease agreement, which governs the Rodeo's rental and use of Reliant Stadium.

Each of these agreements makes the bond insurer a third party beneficiary to the agreement. The bond obligations are paid by (1) hotel occupancy and motor-vehicle rental taxes and (2) taxes on admissions and parking at Reliant Stadium. The Funding Agreement provides that admissions taxes shall not exceed $2 per ticket and that parking taxes shall be $1 per vehicle.

National insures the bonds.[2] The Sports Authority also entered into three Reimbursement and Indemnity Agreements with MBIA (now National), one on May 1, 2001, one on December 15, 2001, and one on June 1, 2004, which provided that National would guarantee regularly scheduled principal and interest payments on the bonds. In exchange, the Sports Authority agreed to indemnify National against any failure by it to perform or comply with the covenants or conditions of the Reimbursement Agreements or the "Related Documents" (which included the bonds, the Indenture, and "any other agreement or instrument relating hereto or thereto . . . ."). The Reimbursement Agreements incorporated all representations,

---

[2]     MBIA Insurance Corporation initially insured the bonds. In 2009, National assumed MBIA's obligations and became authorized to exercise MBIA's rights.

warranties, and covenants in the Related Documents "with the same effect as if each and every such representation, warranty, and covenant and defined term were set forth herein in its entirety."

On several occasions since the issuance of the bonds, the revenues raised by the Sports Authority were insufficient to make the minimum principal and interest payments due on the bonds. To cover these shortfalls, the Sports Authority made claims on the financial guaranty insurance policies issued by National as provided for in the Reimbursement Agreements. National contended that these claims impermissibly reduced the reserve fund provided for in the Indenture that is intended to secure the bond obligations. It also argued that, because the Sports Authority was authorized by statute to impose an admission tax up to 10% of ticket price and parking tax up to $3 per vehicle, the Sports Authority was required by the Indenture to raise admission and parking taxes at Reliant Stadium to legislative maximums in order to cover the shortfalls. *See* TEX. LOC. GOV'T CODE ANN. § 334.152 (West 2005) (admission tax imposed by venue may not exceed 10% of ticket price); §334.202 (West Supp. 2005) (amount of parking tax may not exceed $3 per vehicle). The Sports Authority refused to raise these taxes on the grounds that the Funding Agreement capped these taxes at $2 per ticket and $1 per car, that any additional revenue raised by these measures was required to be rebated to the

5

Texans and the Rodeo under the terms of the Leases and the Funding Agreement and would therefore never be available to service bond obligations, and that it was not authorized to raise these taxes without voter approval.

In January 2013, National sued the Sports Authority, claiming that it had breached the Indenture by refusing to impose admissions and parking taxes at the legislative maximum. National also asserted other breaches by the Sports Authority and a claim for reimbursement. In addition, National requested a declaratory judgment against the Sports Authority, the Convention Corporation, the Texans, and the Rodeo, that the Indenture requires the Sports Authority to impose admissions taxes and parking taxes up to their legislative maximum, and that the provisions of the Leases and the Funding Agreement should be modified and interpreted to permit the incremental revenue generated by these increases to be paid to National.

The Authority and the Convention Corporation filed pleas to the jurisdiction, asserting that they were governmental entities and, accordingly, immune from suit. In response, National asserted that both the Sports Authority and the Convention Corporation had waived their immunity to suit by entering into the agreements related to the bond issuance. The Funding Agreement and the Leases contain express waivers of immunity and agreements not to assert immunity in any action

6

or proceeding related to these agreements. Specifically, the Waiver of Immunity in the Funding Agreement, signed by both the Sports Authority (and incorporated in the Reimbursement Agreements by reference) and the Convention Corporation, provides:

> Each of the Parties unconditionally and irrevocably:
>
> [. . . .]
>
> (b) Agrees that should any Actions or Proceedings be brought against it or its assets in relation to this Funding Agreement or the Principal Project Documents or any transaction contemplated thereunder, no immunity (sovereign or otherwise) from such Actions or Proceedings (which shall be deemed to include, without limitation, suit, attachment, prior to judgment, other attachment, the obtaining of judgment execution or other enforcement) shall be claimed by or on behalf of itself or with respect to its assets;
>
> (c) Waives any such right of immunity (sovereign or otherwise) which it or its assets now had or may acquire in the future . . . .

After a hearing, the trial court granted both pleas to the jurisdiction.

## Discussion

In its first three issues, National contends that the trial court erred in granting the Sports Authority's plea to the jurisdiction because (1) the 2007 Act amending Government Code chapter 1371 waived the Sports Authority's immunity by ratifying the waiver of immunity in the Funding Agreement that was incorporated into the other deal documents, (2) Texas Local Government Code section 271.152

7

waives the Sports Authority's immunity because all of the agreements that the Sports Authority entered into related to the bonds were contracts for services, and (3) the Sports Authority is not entitled to immunity because it issued the bonds in its proprietary, rather than governmental, capacity. In its fourth issue, National contends that the trial court erred in granting the Convention Corporation's plea because Texas Local Government Code section 271.152 operates to waive the Convention Corporation's immunity in this case.

## A. Standard of Review

A plea to the jurisdiction based on governmental immunity from suit is a challenge to the trial court's subject matter jurisdiction. *See City of Waco v. Kirwan*, 298 S.W.3d 618, 621 (Tex. 2009); *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004). "A plea questioning the trial court's jurisdiction raises a question of law that we review de novo." *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007).

When a plea to the jurisdiction challenges the sufficiency of the plaintiff's jurisdictional pleadings, we must determine whether the plaintiff has alleged facts that affirmatively demonstrate the court's jurisdiction. *See Miranda*, 133 S.W.3d at 226. We construe the pleadings liberally in favor of the plaintiff and look to the pleader's intent. *Id.; Smith v. Galveston Cnty.*, 326 S.W.3d 695, 697–98 (Tex.

8

App.—Houston [1st Dist.] 2010, no pet). The party asserting the plea must show that, "even if all the allegations in the plaintiff's pleadings are taken as true, there is an incurable jurisdictional defect apparent from the face of the pleadings, rendering it impossible for the plaintiff's petition to confer jurisdiction on the trial court." *Anderson v. Am. Fed'n of Gov't Emps., AFL–CIO*, 338 S.W.3d 709, 712–13 (Tex. App.—Houston [1st Dist.] 2011, pet. denied). If the pleading contains facts that do not affirmatively demonstrate, but also do not affirmatively negate, jurisdiction, "it is an issue of pleading sufficiency and the plaintiff should be given an opportunity to amend the pleadings." *Kirwan*, 298 S.W.3d at 622 (quoting *Miranda*, 133 S.W.3d. at 226–27). However, if the pleading defects cannot be cured, remand for amendment would serve no legitimate purpose. *See Tex. A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 839 (Tex. 2007). If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend its petition. *Smith*, 326 S.W.3d at 698 (citing *Miranda*, 133 S.W.3d at 227).

When a plea to the jurisdiction challenges the existence of jurisdictional facts, we "'consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised,' even where those facts may implicate the merits of the cause of action." *Kirwan*, 298 S.W.3d at 622 (quoting *Miranda*, 133

9

S.W.3d. at 227). The plea to the jurisdiction standard mirrors that of a traditional motion for summary judgment. *Ross v. Linebarger, Goggan, Blair & Sampson, L.L.P.*, 333 S.W.3d 736, 744 (Tex. App.—Houston [1st Dist.] 2010, no pet.). When reviewing the evidence, we must take as true all evidence in favor of the nonmovant and "indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Kirwan*, 298 S.W.3d at 622 (quoting *Miranda*, 133 S.W.3d. at 228). If the evidence creates a fact issue as to the jurisdictional issue, then the fact-finder will decide that issue. *Id.* (citing *Miranda*, 133 S.W.3d. at 227–28). "However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law." *Id.* (quoting *Miranda*, 133 S.W.3d. at 228).

**B. Sovereign and Governmental Immunity**

Sovereign immunity generally protects the state against lawsuits for money damages; governmental immunity provides protection to subdivisions of the state, including cities, and is derived from the state's sovereign immunity. *City of Houston v. Williams*, 353 S.W .3d 128, 134 (Tex. 2011); *Smith*, 326 S.W.3d at 697–98 (citing *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008) and *Harris Cnty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004)). "Sovereign immunity has two components: immunity from suit and immunity from

10

liability." *Williams*, 353 S.W.3d at 134. Immunity from suit exists, and the state may not be sued, absent an express waiver of immunity by the Legislature. *Id.* Governmental immunity from suit may also be waived, "but we defer to the Legislature to do so by statute." *Id.* Immunity from liability protects the state from money judgments, but is a defense and not a jurisdictional bar as is immunity to suit. *Id.*

Both forms of immunity must be waived in order to recover a money judgment against the state. *See id.* A governmental entity may waive immunity from liability by entering into a contract with a private party, but unless the Legislature has waived immunity from suit, no suit can be maintained. *See id.* Conversely, "immunity from liability shields the state from money judgments, even when the Legislature has given consent to sue." *Id.* A waiver of immunity must be clear and unambiguous, and any ambiguity must be resolved in favor of retaining immunity. *See Tooke v. City of Mexia*, 197 S.W.3d 325, 333 (Tex. 2006); *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 697 (Tex. 2003).

**A. Did the 2007 Act amending Chapter 1371 of the Government Code waive the Sport Authority's immunity?**

In 2007, following the Supreme Court's decision in *Tooke v. City of Mexia*,

11

197 S.W.3d 325 (Tex. 2006)[3], the Legislature amended Chapter 1371 of the Government Code, which governs financing tools for certain obligations for public improvements. *See* Act effective June 15, 2007, 80th Leg., R.S., ch. 1310, 2007 Tex. Gen. Laws 4415–24. The Legislature added section 1371.059(c), which provides that "[a]n issuer in the proceedings to authorize obligations or a credit agreement, or in a credit agreement, may agree to waive sovereign immunity from suit or liability for the purpose of adjudicating a claim to enforce the credit agreement or obligation or for damages for breach of the credit agreement or obligation."[4] *See id.* at § 6, 2007 Tex. Gen. Laws at 4422 (currently codified as

---

[3] Before *Tooke*, the majority of appellate courts followed *Missouri Pacific Railroad Co. v. Brownsville Navigation District*, 453 S.W.2d 812 (Tex. 1970) and held that statutes providing that a governmental entity may "sue and be sued" indicated a "sufficient pronouncement of legislative intent to waive immunity from suit." *See Seureau v. ExxonMobil Corp.*, 274 S.W.3d 206, 216 (Tex. App.—Houston [14th Dist.] 2008, no pet.). In *Tooke*, the Texas Supreme Court overruled *Missouri Pacific*, holding that the phrase "sue and be sued," by itself, cannot be said to be clear and unambiguous, and therefore does not, by itself, waive immunity. *Tooke v. City of Mexia*, 197 S.W.3d 325, 342 (Tex. 2006).

[4] Chapter 1371 defines a credit agreement as

> a loan agreement, revolving credit agreement, agreement establishing a line of credit, letter of credit, reimbursement agreement, insurance contract, commitment to purchase obligations, purchase or sale agreement, interest rate management agreement, or other commitment or agreement authorized by a governing body in anticipation of, related to, or in connection with the authorization, issuance, sale, resale, security, exchange, payment, purchase, remarketing, or redemption of some or all of an issuer's obligations or interest on obligations, or both, or as otherwise authorized by this chapter.

TEX. GOV'T CODE ANN. § 1371.059(c) (West Supp. 2013)).  Section 9 of the Act

provided that the changes made by the Act, including new subsection (c), applied

only to "proceedings related to authorizing the issuance of obligations or the

execution of credit agreements or interest rate management agreements that are

adopted on or after" June 15, 2007, "and to transactions related to the obligations

or agreements."  *See id.* at § 9, 2007 Tex. Gen. Laws at 4423.  Section 9 further

provided that "[p]roceedings related to authorizing the issuance of obligations or

the execution of credit agreements or interest rate management agreements that are

adopted before the effective date of this Act, and transactions related to the

obligations or agreements, are governed by the law in effect on the date the

proceedings were initiated and the former law is continued in effect for that

purpose."  Further, Section 10 of the Act ratified waivers of immunity in

agreements entered into before the effective date if those agreements were entered

into by an issuer "that has authority by statute or under its charter to sue and be

---

TEX. GOV'T CODE ANN. § 1371.001(1) (West Supp. 2013).

Chapter 1371 defines an obligation as
> a public security . . . or other obligation that may be issued by an issuer and that is expected to be rated, and before delivery is rated, by a nationally recognized rating agency for municipal securities in one of the three highest rating categories for a short-term debt instrument or one of the four highest rating categories for a long-term debt instrument.

*Id.* § 1371.001(5).

sued or to plead and be impleaded," and if the agreement "waives sovereign immunity from suit or liability for breach of an obligation or of a credit agreement . . . ." *See id.* at § 10, 2007 Tex. Gen. Laws at 4423.

## 1. Analysis

As a threshold matter, we agree with the Sports Authority that Section 1371.059(c) does not apply to the initial execution of the Indenture, Leases, Funding Agreement, or Reimbursement Agreements, because Section 9 of the Act provides that subsection (c) applies only to "proceedings related to authorizing the issuance of obligations or the execution of credit agreements or interest rate management agreements that are adopted on or after" June 15, 2007. *See* Act effective June 15, 2007, 80th Leg., R.S., ch. 1310, §§ 6, 9, 2007 Tex. Gen. Laws at 4422–23. The agreements at issue in this case were all initially executed before June 15, 2007.

National contends that Section 9 is forward-looking, providing the specific legislative authorization required by *Tooke* for waiving immunity in a credit agreement post-amendment, and that Section 10 is backward-looking, ratifying pre-existing waivers of immunity in agreements that would otherwise have been sufficient under pre-*Tooke* law. By including Section 10, National argues, the Legislature provided the specific legislative authorization that is required by *Tooke*

14

for pre-amendment agreements.

But the Sports Authority argues that this interpretation creates a conflict between Section 9 and Section 10, and that Section 10 of the Act only "ratifies credit agreements entered before the effective date of the Act—but not bonds or bond proceedings." Accordingly, the Sports Authority argues that Section 10 does not apply in this case because the Reliant Stadium bonds were issued before June 15, 2007.

The Sports Authority also contends that Section 10 did not ratify the waiver of immunity in the Funding Agreement, because the Sports Authority did not have the authority by statute to sue or be sued until 2003, and therefore did not have authority to sue or be sued in 2001, when it signed the Funding Agreement. *See* Act of May 28, 2003, 78th Leg., R.S., ch. 981, § 1, 2003 Tex. Gen. Laws 2865 (currently codified as TEX. LOC. GOV'T CODE ANN. § 335.005) (providing that a sports and community venue district may "sue or be sued"). The Sports Authority contends that this language in Section 10—"that has authority by statute or under its charter to sue and be sued or to plead and be impleaded"—refers to the date the agreement is executed. National contends that this language is stated in the present tense, and merely requires that the issuer have authority to sue or be sued as of the effective date of the Act, June 15, 2007.

15

We agree with National that the Sports Authority's reading of Sections 9 and 10 is not justified by the plain language of the Act. We construe statutory language to ascertain and effectuate legislative intent, and we look to the statute's plain meaning because we presume that the Legislature intends the plain meaning of its words. *See Fleming Foods of Tex. v. Rylander*, 6 S.W.3d 278, 282, 284 (Tex. 1999). The Sports Authority argues that, pursuant to Section 9, bond proceedings initiated before June 15, 2007 are governed by "the law in effect on the date the proceedings were initiated," and therefore Section 10's ratification cannot apply to these proceedings, or at least, creates a conflict with this provision in Section 9.

But Section 10 does not draw a distinction between past credit agreements and past bonds or bond proceedings. On the contrary, Section 10 states broadly that it applies to "[a]n agreement described by this section" that "waives sovereign immunity from suit or liability for breach of an obligation or of a credit agreement." Act effective June 15, 2007, 80th Leg., R.S., ch. 1310, § 10, 2007 Tex. Gen. Laws at 4423. It defines such an agreement as one (1) entered into before the effective date of the Act by an issuer that has authority by statute or under its charter to sue and be sued or to plead and be impleaded, and (2) that waives sovereign immunity from suit or liability for breach of an obligation or of a credit agreement. *Id.* It includes no temporal limitation other than that the

16

agreement be entered into before the effective date of the Act.

Here, it is undisputed that the Indenture, Leases, Funding Agreement, and Reimbursement Agreements were entered into before June 15, 2007. Further, the parties agree that the Sports Authority is an issuer, as defined by Chapter 1371. *See* TEX. GOV'T CODE ANN. § 1371.001(4)(N) ("issuer" means a district created under Chapter 335, Local Government Code). And the Sports Authority does not dispute that the Funding Agreement contains a waiver of immunity.

As for the parties' dispute regarding whether Section 10 requires the governmental entity to have had authority by statute or under its charter to sue and be sued on the date the agreement was executed versus the effective date of the Act, we do not need to determine what this language requires, because it is undisputed that the Authority and MBIA (now National) executed a Reimbursement and Indemnity Agreement on June 1, 2004, after the date that the Authority was authorized by statute to sue or be sued, and prior to the 2007 Act. Chapter 1371 defines a credit agreement as, among other things, a "reimbursement agreement." TEX. GOV'T CODE ANN. § 1371.001(1). The 2004 Reimbursement Agreement provides:

> The Issuer hereby makes to MBIA the same representations, warranties and the same covenants made by or with respect to the Issuer, as are set forth in the Related Documents which representations, warranties and covenants, as well as the related

17

> defined terms contained therein, are incorporated herein by this reference *with the same effect as if each and every such representation, warranty and covenant and defined term were set forth herein in its entirety.*

(emphasis added.) Terms incorporated into a contract by reference become part of that contract. *See In re 24R, Inc.*, 324 S.W.3d 564, 567 (Tex. 2010) (orig. proceeding) (per curiam). Here, the 2004 Reimbursement Agreement contained, by reference, "the same representations, warranties and the same covenants made by or with respect to the Issuer, as are set forth in the Related Documents . . . ." The "Related Documents" are the "Bonds and the Indenture and any other agreement or instrument relating hereto or thereto . . . ." The Funding Agreement plainly relates to the bonds and the Indenture, because in the Funding Agreement, the Sports Authority "acknowledge[d] that this Funding Agreement is being executed and delivered in connection with the sale and issuance of the Stadium Project Bonds" and that the "provisions for payment or application thereof in many instances are addressed more specifically in other Principal Project Documents or the Indentures." The Sports Authority's waiver of immunity was incorporated into the 2004 Reimbursement Agreement. *See id.* at 567 (terms incorporated by reference become part of contract). Accordingly, because the 2004 Reimbursement Agreement was entered into before June 15, 2007 by an issuer, the Sports Authority, that had authority to sue or be sued, and it waived immunity, the

2004 Reimbursement Agreement falls under the express terms of Section 10, and the Sports Authority's immunity is waived. *See* Act effective June 15, 2007, 80th Leg., R.S., ch. 1310, § 10, 2007 Tex. Gen. Laws at 4423.

We sustain National's first issue. Because we have held that the Sports Authority waived immunity on this basis, we do not reach National's second and third issues.

## B. Does Texas Local Government Code section 271.152 waive the Convention Corporation's immunity?

National contends that the Convention Corporation's immunity is waived by the Funding Agreement and the Leases, which were signed by the Convention Corporation and to which National is a third-party beneficiary, because they satisfy the requirements of section 271.152 of the Local Government Code.

### 1. Applicable Law

Chapter 271, Subchapter I, of the Local Government Code provides a waiver of immunity for breach of certain contracts. *See* TEX. LOC. GOV'T CODE ANN. §§ 271.151–.160 (West 2005 & Supp. 2013). Three elements are required to waive immunity under section 271.152:

(1) the party against whom the waiver is asserted must be a "local governmental entity" as defined by section 271.151(3),

(2) the entity must be authorized by statute or the Constitution to enter into contracts, and

19

(3) the entity must in fact have entered into a contract that is "subject to this subchapter," as defined by section 271.151(2).

*See id.* § 271.152; *Williams*, 353 S.W.3d at 134–35. A "[c]ontract subject to this subchapter" is "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity." TEX. LOC. GOV'T CODE ANN. § 271.151(2).

"[W]hen a governmental entity and a contracting party enter into a contract subject to subchapter I and denominate a third-party beneficiary of that contract, the third-party beneficiary's claim for breach of contract falls within the waiver of immunity authorized under section 271.152." *Galveston Indep. Sch. Dist. v. Clear Lake Rehabilitation Hosp., L.L.C.*, 324 S.W.3d 802, 810 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (citing *Ben Bolt–Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivisions Prop./Cas. Joint Self–Ins. Fund*, 212 S.W.3d 320, 327 (Tex. 2006)). However, section 271.152 waives immunity only with respect to a "suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter." TEX. LOC. GOV'T CODE ANN. § 271.152.

20

## 2. Analysis

It is undisputed that the first two elements of section 271.152 are satisfied here. *See id.* §§ 271.151–.152; *Williams*, 353 S.W.3d at 134–35. But the parties dispute whether the Convention Corporation entered into a contract subject to subchapter I, as required by section 271.152, and whether the alleged waiver extends to the declaratory judgment claims National asserts against the Convention Corporation. The Convention Corporation signed three contracts to which National is a third-party beneficiary—the Funding Agreement and the two Leases.

We conclude that we need not determine whether these contracts are contracts for goods and services subject to subchapter I because, even if they are, section 271.152's waiver does not extend to the claims National asserts against the Convention Corporation. A section 271.152 waiver covers only "suit[s] for the purpose of adjudicating a claim for breach of the contract . . . ." TEX. LOC. GOV'T CODE ANN. § 271.152. National asserts no breach of contract claims against the Convention Corporation. Rather, in its First Amended Petition, National seeks the following declarations:

(A)   The Authority is obligated to impose and collect all taxes necessary to pay amounts owing or to be owed on the Bonds . . . ;

(B)   The Team Credit provision in Section 2.2(g) of the Funding Agreement is interpreted to exclude the Club Parking Tax

Revenues and the Club Admissions Tax Revenues . . . ;

(C)    The definition of Admissions Taxes and Parking Taxes in the Funding Agreement conflict with the Indenture's definitions . . . ;

(D)    The interpretation of Admission Taxes and Parking Taxes is incorporated into all dependent definitions, including the dependent definitions adopted in the Texans Lease and the Rodeo Lease; and

(E)    The credits provided for in Section 8.1.3 of the Texans Lease and Section 9.1.3 of the Rodeo Lease are not applicable to increases in Admissions Taxes or Parking Taxes unless those increases exceed the legislative maximums . . . .

National relies upon *Harris County Housing Authority v. Rankin*, 414 S.W.3d 198 (Tex. App.—Houston [1st Dist.] 2013, pet. denied), to argue that the Convention Corporation's immunity is waived because immunity is waived at the time a governmental entity enters into a contract, and is "not dependent on a breach to occur for waiver to apply." *Id.* at 204. However, *Rankin* did not hold that a claim for breach of contract was not required in order to maintain a claim under section 271.152. To the contrary, in *Rankin*, Rankin alleged that the Housing Authority breached a buy-out agreement that secured the release of his claims under an employment contract that was subject to section 271.152. This Court concluded that "the Housing Authority, having waived immunity from suit by contracting for services with Rankin, may not now claim immunity from suit

22

brought to enforce an agreement that settled claims arising under that contract for services." *Id.* at 205. That is not our circumstance.

National also relies upon *Ben Bolt–Palito Blanco Consolidated Independent School District v. Texas Political Subdivisions Property/Casualty Joint Self–Insurance Fund*, 212 S.W.3d 320 (Tex. 2006) to support its claim that section 271.152 waives immunity for both breach of contract and declaratory judgment claims. In *Ben Bolt*, the Fund denied coverage for Ben Bolt's claim. *Id.* at 323. Ben Bolt then filed suit seeking a declaration that its loss was a covered occurrence under the insurance agreement's terms. *Id.* The Supreme Court held that section 271.152, which had been enacted while the case was on appeal, waived the Fund's immunity from Ben Bolt's claim arising out of the insurance agreement, without explicitly addressing the circumstance that the underlying claim sought a declaratory judgment. *Id.* at 328. But, in that case, the Fund, which was the party against which Ben Bolt asserted the declaratory judgment action, was the same party that Ben Bolt also asserted had breached the insurance agreement. And, based upon the facts, it was self-evident that the declaratory judgment claim could have been pleaded as breach of the insurance contract.

Here, by contrast, National contends in its petition that it is the Sports Authority, not the Convention Corporation, that has breached the Indenture.

23

National argues that this breach requires certain modifications of other contracts, including the Funding Agreement and the Leases, but National does not allege that these other contracts have been breached by any party, including the Convention Corporation. And National nowhere in its petition contends that the Convention Corporation breached any contract. National cites no authority, and we have found none, holding that section 271.152 waives immunity of a governmental entity that is not alleged to have breached a contract. Section 271.152 does not expressly state that the alleged breaching governmental entity is the only entity as to which immunity is waived. *See* TEX. LOC. GOV'T CODE ANN. § 271.152 ("A local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter." ). But we must resolve any ambiguity in favor of retaining immunity. *See Tooke*, 197 S.W.3d at 330; *Wichita Falls State Hosp.*, 106 S.W.3d at 697. Accordingly, we hold that section 271.152's waiver of immunity does not extend to National's declaratory judgment claims against the Convention Corporation.

The San Antonio Court of Appeals recently considered whether section 271.152's waiver is broad enough to encompass related declaratory judgment

24

claims where a governmental entity has waived immunity as to a breach of contract claim. The court held that "the legislature has not expressly and unambiguously waived immunity from suit for a declaratory judgment claim." *Lower Colorado River Auth. v. City of Boerne*, 422 S.W.3d 60, __ (Tex. App.—San Antonio 2014, pet. filed) (affirming trial court's order granting city's plea to the jurisdiction on plaintiff's declaratory judgment claim, where plaintiffs had also asserted related breach of contract claim against city). This supports our conclusion that section 271.152's waiver of immunity does not extend to National's declaratory judgment claims against the Convention Corporation, particularly here, where National's declaratory judgment claims are not a mirror-image of a breach of contract claim against the Convention Corporation.

National urges us to allow it to replead to assert a breach of contract claim against the Convention Corporation. *See Kirwan*, 298 S.W.3d at 622 (if pleading contains facts that do not affirmatively demonstrate, but also do not affirmatively negate, jurisdiction, it is an issue of pleading sufficiency and the plaintiff should be given an opportunity to amend the pleadings) (quoting *Miranda*, 133 S.W.3d. at 226–27). But the only breach of contract that National identifies that it could assert on remand is a claim for breach of the agreement not to assert immunity. By this logic, a governmental entity could waive its immunity merely by agreeing in a

25

contract not to assert immunity, and then asserting immunity. But only the Legislature can waive immunity, and holding otherwise would circumvent this rule and invoke the policy concerns that dictate that such a waiver can only be authorized by the Legislature. *See Tex. Adjutant Gen.'s Office v. Ngakoue*, 408 S.W.3d 350, 353 (Tex. 2013) (reiterating that it is the legislature's "sole province" to waive or abrogate sovereign immunity); *see also Bacon v. Tex. Historical Comm'n*, 411 S.W.3d 161, 172 (Tex. App.—Austin 2013, no pet.) (rationale for governmental immunity is that the legislature "is best suited to make the policy-laden judgments as to if and how . . . government resources should be expended"). Because National cannot identify a breach by the Convention Corporation that would support the waiver of immunity, we conclude that National's proposed pleading amendments would be futile. *Koseoglu*, 233 S.W.3d at 840 (court should not remand case for repleading if the pleading defects cannot be cured).

We overrule National's fourth issue.

## Conclusion

We affirm the judgment of the trial court as to the Convention Corporation.

We reverse the judgment of the trial court as to the Sports Authority, and remand for further proceedings consistent with this opinion.

Rebeca Huddle
Justice

Panel consists of Justices Higley, Massengale, and Huddle.