

# IN THE
# TENTH COURT OF APPEALS

_____

## No. 10-14-00012-CV

**CAROLYN NORTHCUTT, AS PERSONAL
REPRESENTATIVE OF THE ESTATE
OF JAMES H. BELL,**

                                        **Appellants**

 **v.**

**CITY OF HEARNE,**

                                        **Appellee**

_____

**From the 82nd District Court
Robertson County, Texas
Trial Court No. 12-03-19048-CV**

_____

## DISSENTING OPINION

_____

I believe that the evidence creates a fact question on the nexus or causal relationship between Officer Sullivan's patrol car movements and Bell's accident and death. Therefore, I respectfully dissent.

The Texas Supreme Court just decided a similar case that sets out most of the applicable law:

"A unit of state government is immune from suit and liability unless the state consents." *Dall. Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003) (citing *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999)). Governmental immunity defeats a court's jurisdiction. *Id.* Where a government entity challenges jurisdiction on the basis of immunity, "the plaintiff must affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity." *Id.* (citing *Tex. Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001)) (other citations omitted).

"When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004) (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993)). In doing so, "[w]e construe the pleadings liberally in favor of the plaintiff[] and look to the pleader['s] intent." *Id.* (citing *Tex. Air Control Bd.*, 852 S.W.2d at 446). Where the pleadings generate a "fact question regarding the jurisdictional issue," a court cannot sustain the plea to the jurisdiction. *Id.* at 228.

The asserted source of waiver is the Texas Tort Claims Act ("TTCA"). "The TTCA provides a limited waiver of governmental immunity." *Alexander v. Walker*, 435 S.W.3d 789, 790 (Tex. 2014) (citing TEX. CIV. PRAC. & REM. CODE § 101.023). In relevant part, the statute indicates:

A governmental unit in the state is liable for:

(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:
> (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and
> (B) the employee would be personally liable to the claimant according to Texas law; and

(2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM. CODE § 101.021. … We review jurisdiction and pleading sufficiency de novo. *Miranda*, 133 S.W.3d at 226.

*Ryder Integrated Logistics, Inc. v. Fayette County*, 453 S.W.3d 922, 926-27 (Tex. 2015).

> "However, if a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised," even where those facts may implicate the merits of the cause of action. [*Miranda*, 133 S.W.3d] at 227. If that evidence creates a fact issue as to the jurisdictional issue, then it is for the fact-finder to decide. *Id.* at 227-28. "However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law." *Id.* at 228. In considering this evidence, we "take as true all evidence favorable to the nonmovant" and "indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id.*

*City of Waco v. Kirwan*, 298 S.W.3d 618, 622 (Tex. 2009).

In her petition, Appellant Carolyn Northcutt asserts waiver under section 101.021(2) and makes the following factual allegations:

> On April 10, 2010, James H. Bell ("Bell") was driving his motorcycle northbound on Hwy 79 within the city limits of Hearne, Robertson County, Texas at approximately 9:49 p.m. Officer Christopher Sullivan ("Sullivan"), who was acting in the course and scope of his employment with the Hearne Police Department, had hidden his patrol car in a private driveway (with the patrol car lights off), setting up a speed trap. As Mr. Bell approached the speed trap on his motorcycle, Sullivan pulled the patrol vehicle out of the private driveway to pursue a northbound vehicle (traveling ahead of Mr. Bell's motorcycle northbound on Hwy 79) for a traffic violation. Sullivan flipped on his lights and pulled the patrol vehicle out of the private driveway onto the shoulder in such a way to cause Bell to swerve to avoid contact. As a result of such evasive action, Bell lost control of his motorcycle and it flipped onto its side, throwing Bell onto the highway. Defendant Ewing, traveling northbound on Hwy 79, failed to take evasive action and struck Bell. Bell died as a result of the accident.

Northcutt's negligence cause of action against Hearne states:

> Defendant City of Hearne is a governmental unit that employed Christopher Sullivan as a peace officer. At the time of plaintiff's injury, Sullivan was on duty and in a City of Hearne police motor vehicle and acting within the course and scope of employment for Defendant City of Hearne. Sullivan acted negligently in numerous respects. Sullivan would

be personally liable to Plaintiff under Texas law. Sullivan's negligence proximately caused Bell's injuries and death.[1]

Sullivan's affidavit states in relevant part:

> On the evening of April 10, 2010, at approximately 9:50 p.m., I was on duty as a patrol officer with the City of Hearne Police Department and was monitoring traffic on the south side of the City of Hearne along Highway 79. To place myself in a position where I could observe traffic coming into the City, I backed my patrol car into a short gravel driveway that led from Highway 79 into the GATX rail yard. From this position, I could see, to my left, in a southerly direction down Highway 79. From that location, I could see motor vehicle traffic as it entered the City of Hearne. I sat with my window down.

> At approximately 9:50 p.m. on April 10, 2010, I observed a motor vehicle with only one functioning headlight approaching from the south. Behind that motor vehicle, I could see another motor vehicle coming and a motorcycle behind the second motor vehicle. As the motor vehicle with the non-functioning headlight approached, I put my car into drive with my headlights and taillights on. As that motor vehicle passed me, I started moving slowly forward and turned right very slowly (going north) onto the shoulder of Highway 79. The second motor vehicle that I observed behind the motor vehicle with the defective headlight passed safely. As I had seen the motorcycle behind the second motor vehicle, I stayed on the shoulder of Highway 79 moving very slowly with my headlights and taillights operating waiting for the motorcycle to pass. My window was rolled down. I heard the sound of metal and plastic colliding with the ground. I looked in my rearview mirror to see that the motorcycle had fallen to the pavement approximately 100 feet behind my vehicle. When I heard the sound of the motorcycle crash on the road, I was still sitting on the shoulder of Highway 79 with my headlights and taillights on. I did not pull onto Highway 79 until after I heard the sound of the motorcycle accident and saw the motorcycle rider on the ground. At that time, I pulled onto the highway, turned on my overhead emergency lights and made a U-turn to render aid to the driver of the motorcycle.

> As I was aware of the two motor vehicles and the motorcycle following, I took care to keep my vehicle well on the shoulder and off of the traffic lane of Highway 79 until after the motorcycle passed. Neither the first motor vehicle (with the non-functioning headlight) nor the second

---

[1] Hearne apparently did not specially except to Northcutt's negligence allegations.

motor vehicle had to take any evasive action to avoid my car as they passed me on Highway 79. My car was on the shoulder as the motorcycle approached my position. At no time between the time that I first observed the motor vehicle with the non-functioning headlight until after the motorcycle accident did I pull into the traffic lane of Highway 79. The motorcycle did not contact or collide with my vehicle.

In *Ryder*, which was a jurisdictional challenge to the plaintiff's pleadings, the supreme court addressed a somewhat similar factual situation and whether the injury arose from the allegedly negligent use of a deputy sheriff's cruiser. As in this case, there was no genuine dispute that the officer was operating his vehicle. *See Ryder*, 453 S.W.3d at 928. Sullivan admits in his affidavit that he put his car in drive, and with his headlights and taillights on, he "started moving slowly forward and turned right very slowly (going north) onto the shoulder of Highway 79." And as in *Ryder*, the issue is whether Bell's accident and death arose from Sullivan's allegedly negligent use of his patrol car:

> The question, then, is whether the alleged harm arose from Deputy Thumann's arguably negligent use of the cruiser. The statute itself does not define "arises from." We have defined this standard as a "nexus between the operation or use of the motor-driven vehicle or equipment and a plaintiff's injuries." *Whitley*, 104 S.W.3d at 543 (citations omitted). We have also described the threshold as something more than actual cause but less than proximate cause. *See Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 203 (Tex. 2004) ("'[A]rise out of' means . . . there is but[-]for causation, though not necessarily direct or proximate causation."). Accordingly, a plaintiff can satisfy the "arising from" standard by demonstrating proximate cause. This is particularly appropriate in the context of the TTCA, which only reaches injuries "proximately caused by the wrongful act or omission or the negligence of an employee." TEX. CIV. PRAC. & REM. CODE § 101.021(1).
>
> The components of proximate cause are cause in fact and foreseeability. *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 551 (Tex. 2005). Because proximate cause is ultimately a question for a fact-finder, we need only determine whether the petition "creates a fact question" regarding the causal relationship between Thumann's conduct and the alleged injuries.

*Miranda,* 133 S.W.3d at 228; *see also Ark. Fuel Oil Co. v. State,* 280 S.W.2d 723, 729 (Tex. 1955) ("Question[s] of causation such as proximate cause are normally treated as questions of fact unless reasonable minds cannot differ.").

*Ryder,* 453 S.W.3d at 928-29.

Similarly,[2] our task is to determine whether the evidence creates a fact question on the nexus or causal relationship between Sullivan's conduct and Bell's accident and death. Northcutt directs us to the investigating DPS trooper's accident report ("Texas Peace Officer's Crash Report") in asserting that there is a fact question. The report, which was admitted into evidence at the plea hearing, contains the following "investigator's narrative opinion of what happened":

> #1 [Bell's motorcycle] on US 79, entering the Hearne city limits. There was a Hearne Police Department patrol unit parked in a private drive on the NB side of the roadway, observing vehicular traffic. There was also a truck in front of #1 that was displaying a defective head lamp. The Hearne patrol unit turned out of the private drive and onto the NB improved shoulder, in preparation to allow #1 to pass his location, so he could conduct a legal and valid stop on the truck. Thinking that the patrol unit was going to pull out in front of him, the driver of #1 applied its brakes and in doing so lost control, causing #1 to fall onto it's [*sic*] right side. The driver of #1 was ejected and came to rest in the NB lane of traffic, facing S. An autopsy and toxicology was conducted on the driver of #1. This revealed no alcohol and/or narcotics in the driver of #1's system at the time of the crash.

But as the majority correctly notes, Hearne objected to the admission of the report on hearsay grounds. The trial court sustained the objection, admitted the report except as to any hearsay, and stated that it would "look more at the time, date, and things of that nature." Accordingly, I agree with the majority that the investigating trooper's narrative

---

[2] The only difference is that *Ryder* was decided on the pleadings. While we must look at the evidence, the nexus and causation law in *Ryder* still applies.

opinion in the report on how the crash occurred is not before us. I disagree, however, with the majority that the only evidence before us is Sullivan's affidavit because the "time, date, and things of that nature" in the DPS trooper's accident report are before us, just as was considered by the trial court.

Turning to Sullivan's affidavit *and* to the "time, date, and things of that nature" in the report, the evidence—both the direct and circumstantial evidence,[3] and its reasonable inferences—creates a fact question on the nexus or causal relationship between Sullivan's patrol car movements and Bell's accident and death. As noted above, the factual allegation in Northcutt's petition is that Bell took evasive action in response to Sullivan's pulling his patrol car onto the shoulder as Bell was approaching. Our review of the evidence is de novo, and we "take as true all evidence favorable to the nonmovant [Northcutt]" and "indulge every reasonable inference and resolve any doubts in the nonmovant's [Northcutt's] favor." *Kirwan*, 298 S.W.3d at 622 (quoting *Miranda*, 133 S.W.3d at 228).

---

[3] The majority asserts that there is no evidence of Bell's "thoughts" before he lost control of his motorcycle. But a person's "state of mind can—indeed, must usually—be proved by circumstantial evidence." *Bentley v. Bunton*, 94 S.W.3d 561, 596 (Tex. 2002); *see Richardson v. Crawford*, No. 10-11-00089-CV, 2011 WL 4837849, at *8 (Tex. App.—Waco Oct. 12, 2011, pet. denied) (in negligence case, holding that investigating police officer could testify about person's intent to steal) (citing and quoting *Lee v. State*, 29 S.W.3d 570, 577 (Tex. App.—Dallas 2000, no pet.) ("Police officers may testify to explain how the investigation began and how the defendant became a suspect."); *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004) (stating that intent may "be inferred from circumstantial evidence[,] such as acts, words, and the conduct of the appellant"); *Osbourn v. State*, 92 S.W.3d 531, 536-37 (Tex. Crim. App. 2002) (noting that although police officers typically testify as qualified experts under Texas Rule of Evidence 702, an officer may also be considered a lay witness under Texas Rule of Evidence 701); *Fairow v. State*, 943 S.W.2d 895, 898 (Tex. Crim. App. 1977) (holding that police officers may generally offer lay-opinion testimony concerning matters about which they have personal knowledge and experience in their employment as a law enforcement officer and specifically concerning the meaning of certain behavior of criminal suspects they encounter); *Ledesma v. State*, 677 S.W.2d 529, 531 (Tex. Crim. App. 1984) (noting that the requisite culpable mental state may be inferred from the surrounding circumstances)). Plainly, the facts and reasonable inferences detailed below are not speculative but are grounded in the record's direct and circumstantial evidence.

Sullivan's affidavit states that Bell's accident occurred at approximately 9:50 p.m. on April 10. The report confirms that time and date. The report's section for "Environmental and Roadway Conditions" identifies the light condition as dark and not lighted and the weather condition as being cloudy.[4] The report identifies the roadway type as two-way and not divided, the roadway alignment as straight and level, and the roadway's surface as dry. The report notes that the highway's speed limit was 60 mph. The investigating officer factually asserts that Bell's autopsy and toxicology revealed no alcohol or narcotics in his system at the time of the crash.

Sullivan's affidavit sets forth the following facts that, combined with the investigative report's facts, are relevant to Northcutt's theory that Bell took evasive action in response to Sullivan's patrol car movements:

- Sullivan had backed his patrol car into a short gravel driveway, and to his left (to the south) he could see highway traffic as it was entering Hearne. Sullivan's patrol car was thus perpendicular to the highway.

- Before Sullivan pulled out of the driveway and onto the shoulder, he could see, in addition to the vehicle with a nonfunctioning headlight, another motor vehicle and Bell's motorcycle coming toward him.

- As the vehicle with a nonfunctioning headlight approached him, Sullivan put his patrol car in drive, and his headlights and taillights were on. It was dark.

---

[4] The report's section for "Environmental and Roadway Conditions" sets out the codes for each category in that section, but the copy of the report that was admitted and is in the record omits the "Texas Peace Officer's Crash Report – Code Sheet" that identifies the codes that are used in the report. The Texas Department of Transportation develops and promulgates the Texas Peace Officer's Crash Report form. *See Tex. Dep't of Transp. v. Tex. Weekly Advocate,* No. 03-09-00159-CV, 2010 WL 323075, at *1 (Tex. App.—Austin Jan. 29, 2010, no pet. (mem. op.) (citing TEX. TRANSP. CODE ANN. §§ 550.0601, 550.064). To ascertain the codes used in the report, I would take judicial notice of the "Texas Peace Officer's Crash Report – Code Sheet" form (Form CR-3CS, available at ftp://ftp.dot.state.tx.us/pub/txdot-info/trf/crash_notifications/cr3_code_sheet.pdf). TEX. R. EVID. 201(b, c); *see also MCI Sales & Serv., Inc. v. Hinton,* 272 S.W.3d 17, 26 n.5 (Tex. App.—Waco 2008) (judicial notice may be taken for the first time on appeal), *aff'd,* 329 S.W.3d 475 (Tex. 2010), *cert. denied,* 131 S.Ct. 2903 (2011).

- Because Sullivan's headlights and taillights were on and he could see the two vehicles and Bell's motorcycle, it is a reasonable inference that Bell could see Sullivan's patrol car and the movements that it was making.

- The speed limit was 60 miles per hour (88 feet per second), and it is a reasonable inference that the two vehicles and Bell were traveling at or near the speed limit.

- As the vehicle with a nonfunctioning headlight passed him, Sullivan started moving forward slowly. Because Sullivan's patrol car had been parked perpendicular to the highway, that forward movement would have been westward and perpendicular to the north-south highway.

- Sullivan turned right (north) very slowly onto the highway shoulder, and the second vehicle passed him.

- Sullivan continued moving very slowly on the shoulder with his headlights and taillights on and was waiting for the motorcycle to pass him. Because Sullivan's patrol car was moving, it is a reasonable inference that he was not braking and that his brake lights were not on.

- Bell's motorcycle crashed approximately 100 feet behind Sullivan's patrol car. At 60 miles per hour, Bell's motorcycle crashed approximately 1.1 seconds from Sullivan's patrol car.

- In his affidavit, Sullivan does not expressly state that Bell took evasive action to avoid Sullivan's patrol car, but his affidavit does state: "Neither the first motor vehicle (with the non-functioning headlight) nor the second motor vehicle had to take any evasive action to avoid my car as they passed me on Highway 79." It is a reasonable inference that the reason for Sullivan's statement that the two vehicles did not have to take evasive action is Sullivan's unstated view that Bell did take evasive action to avoid Sullivan's patrol car.[5] In other words, Sullivan's view is that Bell took evasive action to avoid Sullivan's patrol car but he did not need to have done so because the two vehicles did not have to take evasive action to avoid his patrol car.

- The highway surface was dry, and the highway was straight and level; it was not wet or slick, and Bell was not navigating a curve. Bell was not under the influence of alcohol or narcotics.

---

[5] Furthermore, it is irrelevant that the first vehicle (with the non-functioning headlight) did not have to take evasive action because Sullivan plainly states that he did not start moving and pull his patrol car onto the shoulder until that first car was passing him. Also, it is obvious that a motorcyclist has a much different and more serious concern than a motor vehicle driver when the motorcyclist observes that another vehicle might be pulling out in front of him.

In conclusion, after carefully conducting a de novo review of the evidence, and after indulging every reasonable inference and resolving any doubts in Northcutt's favor, I conclude that the evidence creates a fact question on the nexus or causal relationship between Sullivan's patrol car movements[6] and Bell's accident and death.[7]  Accordingly, I would reverse the trial court's order granting the City of Hearne's plea to the jurisdiction and would remand the case to the trial court for further proceedings.

REX D. DAVIS
Justice

Delivered and filed July 30, 2015



---

[6] This conclusion is not an expression that Sullivan was negligent, but only that a fact question exists on the nexus or causal relationship between Sullivan's patrol car movements and Bell's accident and death for purposes of waiver of governmental immunity under the TTCA. *See Ryder*, 453 S.W.3d at 928 ("We express no opinion as to Thumann's actual culpability").

[7] Based on the evidence that I have detailed and its patently reasonable inferences, I disagree that it is "pure speculation" that Bell took evasive action in response to Sullivan's patrol car movements.  Also, if the evidence permits two inferences, equally consistent with two facts, neither fact may be inferred. *City of Keller v. Wilson*, 168 S.W.3d 802, 813-14 (Tex. 2005); *see also Muela v. Gomez*, 343 S.W.3d 491, 496 (Tex. App.—El Paso 2011, no pet.) ("When circumstantial evidence is so slight that the choice between opposing plausible inferences amounts to nothing more than speculation, it is legally no evidence at all.") (citing *Lozano v. Lozano*, 52 S.W.3d 141, 148 (Tex. 2001)).  The equal-inference rule is not applicable here because the evidence, including the road conditions and Bell's lack of impairment, does not support a reasonable inference that some other reason (other than Bell's taking evasive action to avoid Sullivan's patrol car) caused Bell to lose control of his motorcycle and to wreck.