

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| RICARDO A. SAMANIEGO, in his official capacity as County Judge; CARLOS LEON, in his official capacity as a County Commissioner; DAVID STOUT, in his official capacity as a County Commissioner; ILLIANA HOLGUIN, in her official capacity as a County Commissioner; and CARL L. ROBINSON, in his official capacity as a County Commissioner, | § § § § § § | No. 08-22-00029-CV<br><br>Appeal from the<br><br>County Court at Law No. 7<br><br>of El Paso County, Texas<br><br>(TC# 2021DCV1132 ) |
| Appellants, | § | |
| v. | § | |
| ASSOCIATED GENERAL CONTRACTORS OF TEXAS, HIGHWAY, HEAVY, UTILITIES & INDUSTRIAL BRANCH; and A BROTHERS MILLING, LLC, | § § § | |
| Appellees. | § | |

## **O P I N I O N**

This interlocutory appeal is brought by elected officials comprising the El Paso County

Commissioners Court, to include County Judge Ricardo A. Samaniego, and Commissioners,

Carlos Leon, David Stout, Illiana Holguin, and Carl L. Robinson (collectively, Appellants or the

El Paso County Commissioners Court). Appellants challenge the trial court's denial of their plea

to the jurisdiction. Appellees, Associated General Contractors of Texas, Highway, Heavy, Utilities

& Industrial Branch and A Brothers Milling, LLC, (collectively, AGC), filed suit alleging Appellants acted *ultra vires* in setting the prevailing wage rates for heavy-highway construction projects awarded in El Paso County. *See* TEX. GOV'T CODE ANN. § 2258.022(a). In a single issue, Appellants argue the trial court erred in denying their plea to the jurisdiction, claiming that governmental immunity shields each of them, respectively, from AGC's claim, thus depriving the trial court of subject matter jurisdiction. We affirm.

## I. BACKGROUND

When reviewing a trial court's ruling on a plea to the jurisdiction, we are required to construe the pleadings liberally and in favor of the plaintiff. *See City of Monahans v. Southwestern Bell Telephone Company*, 656 S.W.3d 738 743 (Tex. App.—El Paso 2022, no pet.). As a result, in providing context to this appeal, the following factual background is taken directly from AGC's original petition. We begin by setting forth the statutory scheme implicated by AGC's allegations.

Under Texas law, a worker employed on a contract for a public work, either by or on behalf of the state or a political subdivision of the state, shall be paid "not less than the general prevailing rate of per diem wages for work of a similar character in the locality in which the work is performed[.]" TEX. GOV'T CODE ANN. § 2258.021(a)(1). This general prevailing rate of per diem wages for public work also applies for legal holidays and overtime work. *See id*. § 2258.021(a)(2). Where a contract for public work is awarded by a political subdivision of the state, another provision of the Government Code sets forth how prevailing wage rates are determined. Section 2258.022(a) provides that a political subdivision "shall determine the general prevailing rate of per diem wages in the locality in which the public work is to be performed for each craft or type of worker needed to execute the contract[.]" *See id*. § 2258.022(a). And this determination is made by either: (1) conducting a survey of the wages received by classes of workers employed on

2

projects of a character similar to the contract work, in the political subdivision in which the work is to be performed; or (2) by "using the prevailing wage rate as determined by the United States Department of Labor (DOL) in accordance with the Davis-Bacon Act, 40 U.S.C. § 276a et seq., and its subsequent amendments." *See id*. § 2258.022(a)(1) and (2).

Relying in part on § 2258.022(a), AGC alleges the Commissioners Court of El Paso County conducted a survey in 2020 to set the prevailing per diem wages for several classifications of workers doing heavy-highway construction in El Paso County. AGC contends that, even though the El Paso County Commissioners Court claims to have sent a survey to 553 unknown individuals or companies, several of AGC's member companies that do heavy-highway construction in El Paso County reported they never received the 2020 Survey. Essentially, AGC alleges the survey distribution failed to reach enough relevant heavy-highway contractors such as to make the survey results reliable in calculating the prevailing wage rate for the locality and type of worker.

Moreover, AGC alleges the County's prevailing wage determinations are based on improper data. Specifically, AGC contends the prevailing wage rate that was set for milling machine operators initially included wage data that a contractor paid to a Pennsylvania worker based on Pennsylvania's prevailing wage rate as set for a higher-paid class of workers. While the El Paso County Commissioners Court ultimately eliminated the Pennsylvania data from its determination of prevailing wages, AGC further contends the County was unable to confirm or deny whether other improper data had been similarly included in its wage calculations for other workers.

According to AGC, the El Paso County Commissioners Court also improperly used the *average* per diem wage rate instead of the *prevailing* per diem wage rate, as required by Texas law. It claims the El Paso County Commissioners Court improperly calculated the prevailing rate

3

for fringe benefits by *averaging* all the responses even though most contractors do not provide any fringe benefits as a wage rate. As an example, AGC attached the El Paso County Commissioners Court's calculation of the prevailing per diem wage rate for heavy-highway electricians to its response to the plea to the jurisdiction. The calculation shows that out of the eleven contractors that responded with data, only three paid benefits to heavy-highway electricians. Despite the data showing that most contractors pay no fringe benefits to this category of workers, the El Paso County Commissioners Court took the total of fringe benefits paid by the three responding contractors ($21.69) and divided it by all eleven responding contractors to set a prevailing fringe benefit wage of $1.97 for heavy-highway electricians.

Based on these allegations, AGC filed suit seeking declaratory and injunctive relief, as well as attorneys fees. First, AGC requested declarations that "the 2020 Prevailing Wage Rates, as they pertain to heavy/highway, are void, invalid, illegal, and unenforceable, and that the County acted *ultra vires*" when it adopted the wage rate. AGC asserted the 2020 prevailing wage rates for heavy/highway should be stricken and a new survey conducted. Second, it sought injunctions prohibiting the El Paso County Commissioners Court from enforcing the 2020 prevailing wage rates for this class of workers and prohibiting it from entering into an agreement with other public entities allowing them to use the 2020 prevailing wage rates for their public works contracts.

Each of the members of the El Paso County Commissioners Court filed a combined pleading including their respective assertion of a general denial, and assertion of affirmative defenses, and a plea to the jurisdiction. Without attaching evidence, the members argue they are individually immune from AGC's lawsuit as members of a governmental entity. After holding a hearing, the trial court summarily denied the plea to the jurisdiction. This interlocutory appeal followed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8).

## II. STANDARD OF REVIEW

A plea to the jurisdiction is a dilatory plea that seeks dismissal of a suit for lack of subject matter jurisdiction. *Harris Cnty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). Because immunity from suit defeats a trial court's subject matter jurisdiction, such immunity is properly asserted in a plea to the jurisdiction. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004). A plea challenging the trial court's jurisdiction raises a question of law reviewed de novo. *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007).

A plea to the jurisdiction can challenge either the pleadings or the existence of jurisdictional facts. *See Miranda*, 133 S.W.3d at 226-27. When, as here, a plea to the jurisdiction challenges a plaintiff's pleadings, the determination turns on whether the pleader has alleged sufficient facts to demonstrate the court's subject-matter jurisdiction. *Id.* We construe the pleadings liberally in favor of the plaintiff and look to the pleader's intent. *City of Waco v. Kirwan*, 298 S.W.3d 618, 621 (Tex. 2009). If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiff should be afforded the opportunity to amend. *Miranda*, 133 S.W.3d at 226-27. If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend. *Id.* at 227.

## III. DISCUSSION

In a single issue, Appellants argue the trial court erred in denying their plea to the jurisdiction for want of jurisdiction. Respectively, each of the elected officials contend that governmental immunity shields them from suit unless immunity has been expressly waived by the

legislature. They claim that neither AGC's claim under the Uniform Declaratory Judgments Act nor its *ultra vires* claim against each of them provide an express waiver of immunity.

## A.     Controlling law

"In Texas, sovereign immunity deprives a trial court of subject matter jurisdiction for lawsuits in which the state or certain governmental units have been sued unless the state consents to suit." *Miranda*, 133 S.W.3d at 224. And political subdivisions of the state—such as counties—are also entitled to this immunity protection. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 368 (Tex. 2009). A lawsuit, however, against a state official in his or her official capacity can proceed in the absence of a waiver of immunity, if the official's actions are *ultra vires*. *Hall v. McRaven*, 508 S.W.3d 232, 238 (Tex. 2017). "An *ultra vires* action requires a plaintiff to 'allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act.'" *Id.* (quoting *Heinrich*, 284 S.W.3d at 372). While these actions are not brought against the state or its subdivisions because the state's immunity is retained, the individual state actors may be sued in their official capacity. *Heinrich*, 284 S.W.3d at 372. The Supreme Court of Texas has held that a government official with absolute discretion to act—that is, "free decision making without any constraints"—cannot act without legal authority, and, therefore, is not subject to *ultra vires* suits. *See Houston Belt & Terminal Railway Co. v. City of Houston*, 487 S.W.3d 154, 161 (Tex. 2016). But a "government officer with some discretion to interpret and apply a law may nonetheless act 'without legal authority,' and thus *ultra vires*, if he exceeds the bounds of his granted authority or if his acts conflict with the law itself." *Hall*, 508 S.W.3d at 238 (quoting *Houston Belt*, 487 S.W.3d at 158). An *ultra vires* suit based on actions taken without legal authority, therefore, has two components: "(1) authority giving the official some (but not absolute)

6

discretion to act and (2) conduct outside of that authority." *Id.* (citing *Houston Belt*, 487 S.W.3d at 158).

**B.      Analysis**

Here, as is generally the case, the limits of Appellants' authority are found in the authority-granting law itself, that is, by the language of § 2258.022(a) of the Government Code. *Houston Belt*, 487 S.W.3d at 165 (stating that the bounds of a government official's discretion are generally found in the authority granting law); *see also* TEX. GOV'T CODE ANN. § 2258.022(a). Appellants argue that while § 2258.022(a) requires that they either conduct a survey or adopt the U.S. DOL's prevailing wage rates, the legislature otherwise left it to their discretion on *how* the survey of wages could be conducted. Asserting they exercised their discretion in conducting the 2020 survey, Appellants contend they are each immune from AGC's suit challenging the methodology of the survey and its results.

AGC counters that § 2258.022(a) only gives Appellants *some* discretion on how to conduct the survey, not unlimited discretion. AGC alleged in its live pleading that Appellants exceeded their discretion by conducting a survey that did not in fact determine the "prevailing rate" paid for similar work in the area as prescribed by the statutory terms. Specifically, AGC alleged two ways in which Appellants exceeded their discretion in conducting a prevailing wage rate survey. First, it alleged Appellants collected incomplete and inaccurate data regarding the prevailing wage rates for heavy-highway workers performing work in El Paso County. Second, it claimed Appellants calculated the "prevailing" wage rates of the various workers based on incomplete and improper data. Because AGC affirmatively alleges Appellants acted outside of their discretionary authority in conducting a survey, it argues it brought an *ultra vires* claim squarely within the trial court's subject-matter jurisdiction. Because all pleaded allegations are accepted as true at this phase of the

7

proceeding, we agree with AGC that its petition affirmatively implicated the court's subject matter jurisdiction.

**(1)    AGC's allegations of *ultra vires* conduct implicates the trial court's subject-matter jurisdiction**

By its petition, AGC alleges the El Paso County Commissioners Court failed to comply with § 2258.022(a) of the Government Code when it conducted the 2020 Survey and adopted the 2020 Prevailing Wage Rates for heavy-highway workers. This allegation requires us to interpret and apply the terms of the statute, which we construe de novo. *Jaster v. Comet II Const., Inc.*, 438 S.W.3d 556, 562 (Tex. 2014). When interpreting the language of § 2258.022, our primary objective is to give effect to the legislature's intent. *Silguero v. CSL Plasma, Inc.*, 579 S.W.3d 53, 59 (Tex. 2019). We presume the legislature used (or omitted) every word of a statute for a purpose. *Id*. Thus, we give statutory terms their full effect based on the context and read unambiguous statutory text based on its plain meaning according to the rules of grammar and common usage. *Id.*; *see also Miles v. Texas Central Railroad & Infrastructure, Inc.*, 647 S.W.3d 613, 629 (Tex. 2022). In doing so, "we must look to the plain language, construing the text in light of the statute as a whole." *Silguero*, 579 S.W.3d at 59. To these ends, statutory terms bear their common, ordinary meaning, unless the text provides a different meaning or the common meaning leads to an absurd result. *Id*.

Here, the legislature permits the El Paso County Commissioners Court to conduct a survey of wages received by classes of workers employed on projects of a similar character in El Paso County to determine "the general prevailing rate of per diem wages in the locality . . . for each craft or type of worker needed to execute the contract and the prevailing rate for legal holiday and overtime work[.]" *See* TEX. GOV'T CODE ANN. § 2258.022(a). In doing so, however, the legislature does not permit absolute discretion on how the survey is conducted. As part of the statutory scheme, a survey of wages complying with § 2258.022(a)(1), must also comply with § 2258.021.

8

First, § 2258.021 includes mandatory language as follows:

A worker employed on a public work by or on behalf of the state or a political subdivision of the state *shall* be paid:

    (1)  not less than the general prevailing rate of per diem wages for work of a similar character in the locality in which the work is performed; and

    (2)  not less than the general prevailing rate of per diem wages for legal holiday and overtime work.

*Id*. § 2258.021(a) (emphasis added). This provision requires, at minimum, that workers employed by or on behalf of a public entity shall receive the general prevailing rate of per diem wages for their class of labor in the specific locality. *See id.*

Second, § 2258.022(a) permits the political subdivision to either conduct a survey or use the prevailing wage rate as determined by the U.S. DOL. *See id*. § 2258.022(a)(1) and (2). Nevertheless, regardless of which method is chosen, "the public body *shall* determine the general prevailing rate of per diem wages in the locality in which the public work is to be performed for each craft or type of worker needed to execute the contract and the prevailing rate for legal holiday and overtime work." *Id*. § 2258.022(a) (emphasis added). In other words, §§ 2258.021 and 2258.022 work in tandem imposing the same requirement.

When read together, the legislative scheme tasks the political subdivision with determining "the general prevailing rate of per diem wages in the locality in which the public work is to be performed for each craft or type of worker needed to execute the contract[.]" *See id*. § 2258.022(a). And this prevailing wage rate may be determined by "conducting a survey of the wages received by classes of workers employed on projects of a character similar to the contract work in the political subdivision of the state in which the public work is to be performed[.]" *Id*. § 2258.022(a)(1). While the language included in § 2258.022(a)(1) does not provide a specific method that public bodies must use in conducting the survey—and, thus, leaves the chosen method

9

largely within their discretion—to fulfill the legislature's intent, the data designed to be collected must reflect the "prevailing rate of per diem wages" for each class of worker needed to execute the contract in the specific locality. *See id.* For example, a public body that sends surveys to plumbers in New York City to determine the prevailing wage rate of electricians in El Paso County would not be seeking the appropriate prevailing wage of the jurisdictional locality. In that scenario, the public actors would more likely be operating outside of the bounds of their discretion. To this extent, the type of information collected by the survey is cabined by statutory terms.

As relevant here, we often look to dictionary definitions to shed light on the ordinary meaning of terms not otherwise defined by the legislature. *Silguero*, 579 S.W.3d at 60. Here, §§ 2258.021 and 2258.022(a) include terms such as "prevailing," "per diem," and "wages," which all have common and ordinary meanings. First, "prevailing," an adjective, means "predominant," "generally current," and "having superior power or influence." *Prevailing*, WEBSTER'S NEW UNIVERSAL UNABRIDGED DICTIONARY 1535 (2nd ed. 2003). Second, "per diem," when used as an adjective, as it appears here, is defined as "[b]ased on or calculated by the day[.]" *Per diem*, BLACK'S LAW DICTIONARY 1317 (10th ed. 2014)("A daily fee; esp., an amount of money that an employer pays a worker for each day that is worked."). Finally, "wage," a noun, means: "[p]ayment for labor or services, usu. based on time worked or quantity produced; specif., compensation of an employee based on time worked or output of production." *Wage*, *id*. at 1811. This term is defined to include "every form of remuneration payable for a given period to an individual for personal services, including salaries, commissions, vacation pay, bonuses, and the reasonable value of board, lodging, payments in kind, tips, and any similar advantage received from the employer." *Id*.

10

Plainly, AGC alleges the El Paso County Commissioners Court acted outside the authority provided by § 2258.022(a)(1) when it conducted its survey. Specifically, it alleges that Appellants' 2020 survey was not designed to find the accurate prevailing wages for the classes of workers necessary for heavy-highway construction in El Paso County. It claims that Appellants' "distribution method failed to reach a sufficient number of relevant contractors to make the data reliable" and that the 2020 survey of prevailing wage rates had incorporated rates from outside of El Paso County and for incorrect worker classifications. Whether AGC can ultimately prove these allegations is irrelevant at this stage of the litigation. Here, we must construe the pleading liberally and in AGC's favor. *Kirwan*, 298 S.W.3d at 621. In doing so, we first determine that Appellants' respective discretion under § 2258.022(a)(1) was somewhat limited by several terms of the statute. On review of AGC's pleading, we conclude that AGC affirmatively pleaded that Appellants exceeded their discretion by failing to properly establish wages predominating or having superior power or influence in El Paso County, including for the heavy-highway class of construction workers whose wages made up a part of the survey results. *See Hall*, 508 S.W.3d at 238; TEX. GOV'T CODE ANN. § 2258.022(a)(1) (providing the survey at issue must reflect the "prevailing rate of per diem wages" for each class of worker needed to execute the contract in the specific locality). Accordingly, we conclude that AGC's claim implicates the trial court's subject-matter jurisdiction. Thus, we overrule Appellants sole issue.[1]

---

[1] At this juncture, we consider only whether AGC's pleading was sufficient to allow it to maintain an *ultra vires* claim regarding the determination of prevailing wage rates as required by the statutory scheme. *Cnty. of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002); *see also* TEX. GOV'T CODE ANN. §§ 2258.021 and 2258.022(a)(1). Because we conclude that AGC has affirmatively pleaded an *ultra vires* claim implicating the trial court's subject-matter jurisdiction, we find it unnecessary for this jurisdictional inquiry to further consider the remaining allegations made about fringe benefits. *See Thomas v. Long*, 207 S.W.3d 334, 338-39 (Tex. 2006) (providing that courts determine subject-matter jurisdiction for each claim asserted); *see also* TEX. R. APP. P. 47.1.

### (2) Appellants' determination of the general prevailing wage is not final

Appellants also argue that § 2258.022(e) makes the El Paso County Commissioners Court's determination of the prevailing wages unreviewable. Indeed, § 2258.022(e) states the "public body's determination of the general prevailing rate of per diem wages is final." Though Appellants do not cite to it, case law interpreting a predecessor statute to § 2258.022—which also stated that the public body's determination of the general prevailing wages "shall be final"—holds that a public body's determination of the prevailing wages "is final and not subject to review by the Courts." *Texas Highway Commission v. El Paso Bldg. & Const. Trades Council*, 234 S.W.2d 857, 863 (Tex. 1950).

The Supreme Court of Texas, however, has clarified that *ultra vires* acts made by public officials—or those acts done without authority—"should not be considered acts of the state at all." *Hall*, 508 S.W.3d at 238. The purpose of *ultra vires* suits against errant public officials is not an attempt to exert control over the state, but an attempt to reassert control of the state over one of its agents and enforce existing policy determinations. *Id.*; *Houston Belt*, 487 S.W.3d at 164 ("Allowing such suits, on the other hand, encourages enforcement of existing policy."). *Ultra vires* suits, therefore, must be asserted against public officials, individually, in their official capacity, instead of against the public entity itself. *Heinrich*, 284 S.W.3d at 373. Consequently, while § 2258.022(e) makes final the determination of prevailing wages by the El Paso County Commissioners Court, nonetheless, if officials of this public body act *ultra vires* in setting such prevailing wages—as AGC alleged in its petition—then, in such case, the wage determination is no longer recognized as an act of the body itself, nor a final determination. *See Hall*, 508 S.W.3d at 238. As a result, because this suit affirmatively alleges abuses of discretion by the respective

12

Appellants, while acting in their official capacity, the trial court's jurisdiction is implicated and no error occurred in the denial of the plea to the jurisdiction.

Accordingly, we overrule Appellants' sole issue.

## IV.    CONCLUSION

For the foregoing reasons, we overrule Appellants' sole issue on appeal and affirm the trial court's denial of the plea to the jurisdiction.

GINA M. PALAFOX, Justice

March 27, 2023

Before Rodriguez, C.J., Palafox, and Soto, JJ.

13