No. 15-24-00052-CV

ACCEPTED
15-24-00052-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
3/10/2025 11:41 PM
CHRISTOPHER A. PRINE
CLERK

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
3/10/2025 11:41:38 PM
CHRISTOPHER A. PRINE
Clerk

IN THE FIFTEENTH DISTRICT COURT OF APPEALS (AUSTIN)

Richard M. YOUNG, Jr. a/k/a Richard Young,
*Appellant*
*vs.*

TEXAS PARKS & WILDLIFE DEPARTMENT, et al.,
*Appellees.*

## APPELLANT'S REPLY BRIEF

**ORAL ARGUMENT REQUESTED**

KELLER STOLARCZYK PLLC
Kimberly S. Keller
SBN: 24014182
Email: kim@kellsto.com
215 West Bandera Rd
No. 114, PBO 800
Boerne, Texas 78006
Tele: 830.981.5000
Facs: 888.293.8580

*Attorney for Appellant*

1

# TABLE OF CONTENTS

*Page*

INDEX OF AUTHORITIES ............................................................... 3

SUMMARY OF REPLY ARGUMENT ........................................... 4

REPLY ARGUMENT IN SUPPORT OF REVERSAL ................. 6

I. TPWD WRONGFULLY ASSUMES THIS COURT WILL MERELY RUBBER-STAMP TPWD'S STATUTORY INTERPRETATION OF "WILD ANIMAL" ........................................ 6

II. TPWD'S SILENCE AS TO YOUNG'S NON-BREEDER DEER CLAIMS SPEAKS VOLUMES ........................................ 12

III. THE TRIAL COURT ERRED IN FAILING TO AFFORD YOUNG THE RIGHT TO REPLEAD ................................. 14

A. *Young's Amended Petition, filed the night before the jurisdictional plea hearing, raised broad-based takings & due process claims.* ........................... 15

B. *TPWD abandoned its right to file Special Exceptions & demanded an immediate hearing on its jurisdictional challenge.* ...................................... 23

C. *If in doubt, Young should be given the opportunity to replead.* ...................................... 24

CONCLUSION & PRAYER .......................................................... 25

CERTIFICATE OF COMPLIANCE & SERVICE ...................... 27

# INDEX OF AUTHORITIES

*Accident Fund Ins. Co. of Am. v. Texas Dep't of Ins., Div. of Workers'*
*Comp.*, 2025 WL 421009 (Tex. Feb. 7, 2025) ........................... 10,11

*Bailey v. Smith,*
581 S.W.3d 374 (Tex. App. – Austin 2019, no pet.) ....................... 11

*City of Waco v. Kirwan,*
298 S.W.3d 621 (Tex. 2009) .......................................................... 24

*Dallas Area Rapid Transit v. Whitley,*
104 S.W.3d 540 (Tex. 2003) .......................................................... 23

*Loper Bright Enterprises v. Raimondo,*
603 U.S. 369 (2024), ...................................................................... 4

*Mosley v. Tex. Health & Human Servs. Cmm'n,*
593 S.W.3d 250 (Tex. 2019) .......................................................... 14

*Roark v. Allen,*
633 S.W.2d 804 (Tex. 1982) .......................................................... 23

*Tex. Dep't of Transp. v. Sefzik,*
355 S.W.3d 618 (Tex. 2011) .......................................................... 24

*Tex. Dep't of Parks & Wildlife v. Miranda,*
133 S.W.3d 217 (Tex. 2004) ..................................................... 23,24

*The Huff Energy Fund, LP v. Longview Energy Co.,*
482 S.W.3d 184 (Tex. App.—San Antonio 2015) ........................... 24

*Longview Energy Co. v. Huff Energy Fund LP,*
533 S.W.3d 866 (Tex. 2017) .......................................................... 24

*Tyler v. Hennepin Cnty., Minn.,*
598 U.S. 631 (2023) ........................................................................ 4

## SUMMARY OF REPLY ARGUMENT

In a case of this significance, bearing on whether state agencies are allowed to continue eroding Texas's billion-dollar deer hunting and breeding industry, oral argument is warranted. Young filed an extensive opening brief (90 pages) addressing the complex constitutional issues presented within this case of first impression. Resolution of those issues require this Court, for the first time, to interpretate recently-issued precedent by the Supreme Court of the United States that calls into question the conduct of TPWD and the legislative authority relied upon by the agency.[1]

In response to Young's voluminous brief, TPWD responded with superficial, presumptuous arguments that fail to acknowledge the devastating impact of its hysterical reaction to fears of Chronic Wasting Disease ("CWD"). TPWD aimed its sites on Young's breeder deer, ranch, and business, as well as those of other Texas deer breeders.[2] TPWD's

---

[1] *Loper Bright Enterprises v. Raimondo,* 603 U.S. 369 (2024) (abandoning *Chevron* doctrine as "fundamentally misguided," demanding deference to agency-based statutory interpretation); *Tyler v. Hennepin Cnty., Minn.,* 598 U.S. 631 (2023) (rejecting Minnesota's attempt to "legislate away" private citizens' vested property rights and reminding States that state legislation cannot override federal and state civil liberties demanding due process and protecting private property rights).
[2] In an Amicus Brief filed by the TEXAS CWD COALITION and PATRIOTS OF TRUTH in support of Young's Emergency Motion to Stay, the Amici, on Page 11 of the *Amicus*

response brief, when read between the lines, shows the agency believes this Court will merely rubber-stamp the agency-based statutory interpretation.

But, this appeal is about *more than* Young's breeder deer and, contrary to TPWD's request, this Court cannot merely sweep under the rug the erroneous dismissal of Young's non-breeder deer claims. As spelled out in Young's live petition, TPWD's unconstitutional conduct also debilitated and destroyed Young's ranch land, improvements, small business, and rendered impotent the rights he continues to possess under his validly issued breeding permits – without due process or just compensation.

Young's brief independently analyzes each and every one of the vested property rights taken, without due process. In hindsight, TPWD likely regrets its insistence in going forward with the plea to the jurisdiction hearing after Young filed, the day before the hearing, a broad amended petition raising a series of additional claims. Indeed, TPWD's co-defendant (and not party to this appeal), TAHC, took the more

---

*Brief,* offers data revealing that TPWD's CWD-based targeting of breeder deer, beginning in 2014, has killed off fifty-percent (50%) of all Texas deer breeding operations, going from 1,395 in 2014 to 732 in 2024.

cautious approach, sought a continuance of the hearing, and likely intends to file special exceptions if necessary to flesh out the expansive nature of Young's amended petition. Thus, at a minimum, despite TPWD's rush to lock the courthouse doors to Young and his expansive claims, binding precedent requires a remand to afford Young a chance to replead.

## REPLY ARGUMENT IN SUPPORT OF REVERSAL

### I.
### TPWD WRONGFULLY ASSUMES THIS COURT WILL MERELY RUBBER-STAMP TPWD'S STATUTORY INTERPRETATION OF "WILD ANIMAL"

TPWD spends the bulk of its response brief contending Young has no vested right in his breeder deer, championing the statutory provision stating all "wild animals" that are "inside the borders of this state" are owned by the State.[3] Notably, the term "wild" is not defined in the statute. Black's Law Dictionary tells us "[w]ild animals" are "[a]nimals of an untamable disposition; animals in a state of nature." BLACK'S LAW DICTIONARY (6th Edition 1991).

This is an image of breeder deer born and raised on Young's ranch:

---

[3]"All wild animals, fur-bearing animals, wild birds, and wild fowl inside the borders of this state are the property of the people of this state." TEX. PARKS & WILDLIFE CODE § 1.011



On his website, Young breaks down the extensive lineage of each breeder deer, all raised exclusively in high-fenced pens, similarly to livestock, and then fed, reproduced, and sold to others, like livestock.[4]

Young's breeding program, like that of all deer breeders, carefully cultivated the genetics of the whitetail offspring, seeking to reproduce high-quality animals, just as other Texas livestock ranchers. This flowchart is provided by Young on his website to detail to potential purchasers the lengthy lineage and selective breeding protocols developed by him over the past two decades to raise whitetails on his ranch:

---

[4]Triple AAA&J Ranch (Gillespie County), *Our Breeding Program:* https://www.tripleaaajranch.com/breeding-info/ (last visited on March 10, 2025).



*Id.* Yet, TPWD assumes within its responsive brief (that lacks any substantive statutory analysis that Young's whitetails constitute "wild animals" owned, not by Young, but by the State. TPWD argues because Young's deer "belong to the State," it may do with these whitetails as it pleases, *i.e.,* demand euthanasia or, alternatively, destroy the animals and their value by refusing to allow Young to move them from their pens, without affording Young any form of due process or just compensation as occurs with any other private property right owned by a Texan.

Black's Law Dictionary also defines "[w]ild land" as "[l]and in a state of nature, as distinguished from improved or cultivated land." BLACK'S LAW DICTIONARY (6th Edition 1991). The breeding pens operated by Young, that TPWD constitutes "wild land" resemble the same type of improvements seen on other traditional livestock ranches:



*Young's Mtn for Emergency Relief, Exh.1.* The high-fencing identified above in red is heavy-duty and doubly-layered with electric wiring:



*Id.* at *Exh.2.* Accordingly, although Young is the proud owner of nearly

1,500 acres of Texas land, the portion of the ranch TPWD claims is "wild" and, thus, under its purview according to its statutory interpretation, is improved and cultivated land.

Accordingly, Young's appeal requires this Court to independently analyze the statute upon which TPWD's jurisdictional plea is based, not, as TPWD insinuates is a compulsory adoption of its reading of the statute. Justice Young of the Supreme Court of Texas recently referenced *Raimondo*'s repudiation of the *Chevron* deference doctrine when concurring in the denial of a petition for review in a case "rais[ing] significant statutory-interpretation questions" that implicate "the proper role of administrative agencies as compared to the courts." *Accident Fund Ins. Co. of Am. v. Texas Dep't of Ins., Div. of Workers' Comp.*, No. 23-0273, __ S.W.3d __, 2025 WL 421009, at *4 (Tex. Feb. 7, 2025) (Young, J., concurring).

There, Justice Young indicated Texas courts' duty, similar to the duty on federal courts as expressed in *Raimondo,* to perform an independent statutory analysis, as opposed to the agency-deferential interpretation called for by TPWD:

> Administrative agencies in Texas have seemingly never enjoyed the deference once endorsed by the

U.S. Supreme Court, although our cases have occasionally hinted that "the analysis in which we engage is similar." If ever there were a time to transform similarity into sameness (a doubtful proposition all along in this context), it is certainly not now, when the Supreme Court has decidedly abandoned *Chevron* as "fundamentally misguided."

*Accident Fund Ins. Co. of Am. v. Texas Dep't of Ins., Div. of Workers' Comp.*, No. 23-0273, __ S.W.3d __, 2025 WL 421009, at *4 (Tex. Feb. 7, 2025) (citing *Raimondo*) (citations omitted).

In conclusion, TPWD argues Young has no right to set foot in the courthouse doors regarding the destruction of his breeder deer without due process or compensation and that courts altogether lack jurisdiction; yet, the **<u>centerpiece</u>** of TPWD's jurisdictional challenge, *i.e.,* that Young can and shall never have a vested right in his breeder deer, is *Bailey,* a split opinion from the Third Court of Appeals, sharply criticized by a sagacious dissenting opinion[5] resembling the reasoning set forth by Chief

---

[5]TPWD cites to *Bailey v. Smith,* 581 S.W.3d 374 (Tex. App. – Austin 2019, no pet.), a split opinion authored by Justice Smith that adopted TPWD's interpretation of Section 1.011 that breeder deer are "wild animals." *TPWD Br.* at 14. TPWD failed to address the extensive dissent authored by Justice Goodwin, who reasoned that Section 1.011 "is not inconsistent with acquiring property interests in captive-bred white-tailed deer under the common law. **The provisions relied on by the Court do not represent 'clear legislative intent' to deprive deer breeders of their rights under common law to acquire property rights in their breeder deer.**" *Id.* at 406 (Goodwin, J., dissenting) (emphasis added & further explaining, "Because it is undisputed that Peterson legally held the breeder deer under permit and in captivity,

11

Justice Roberts in *Tyler* years later. This Court must conduct an independent statutory analysis of the relevant code provisions and should revisit the precedent upon which TPWD's jurisdictional challenge *as to Young's breeder deer* in light of *Raimondo* and *Tyler* (which has yet to be addressed by a Texas court.

## II.
### TPWD'S SILENCE AS TO YOUNG'S NON-BREEDER DEER CLAIMS SPEAKS VOLUMES

TPWD's responsive briefing is perplexing. It focuses almost exclusively on Young's *breeder deer,* arguing Young is not entitled to due process or just compensation for the destruction and taking of his *breeder deer,* but then wholly ignores Young's parallel due process and takings claims as to Young's additional private property:

(1)    his land and the improvements built upon it;

(2)    his small business; and

(3)    his permit.

All three of these property interests have been undisputedly negatively impacted, if not altogether destroyed, by TPWD's injurious conduct.

---

I conclude that Peterson acquired a constitutionally protected property interest in the breeder deer and therefore respectfully dissent from the Court's contrary conclusion").

12

While TPWD response brief focused almost exclusively on Young's claim to his breeder deer, demanding this Court adopt its interpretation of "wild animal" and insists this Court to hold Young has no vested rights to the breeder deer he produced, fed, and raised like livestock, TPWD pretty much ignores Young's non-deer breeder claims (ranch acreage, improvements, small business, and existing [non-revoked] breeding permits). Yet, *all* of Young's private property is constitutionally protected, deserving of separate and independent analyses.

Ironically, even TPWD's primary case, *Bailey,* addressed the unique nature of these separate and distinct categories of private property, taking care to emphasize that its narrow holding did not address them:

> Our conclusion **does not address** whether a breeder has a vested right in a breeder's permit. Peterson asserts in his briefing that "regardless of the captive-bred deer ownership issue" the Department must further show that he has no protected property interest in his breeder's permit. Specifically, he asserts that "the pursuit of one's chosen, lawful occupation" is a protected interest and, as a result, his permit "cannot be taken without procedural due process."
>
> The right to pursue a certain occupation is an economic liberty interest protected by the substantive component of the due course of law clause. To establish that an economic regulation is unconstitutional for violating this protection, a

13

> party must show either that the law's "purpose could not arguably be rationally related to a legitimate governmental interest" or that "when considered as a whole, the [law's] actual, real-world effect as applied to the challenging party could not arguably be rationally related to, or is so burdensome as to be oppressive in light of, the governmental interest."
>
> Peterson alleged in a previous petition that the CWD Rules are unconstitutionally oppressive but his live petition at the time of the district court's ruling omits that claim. Because Peterson elected not to go forward on that claim in the district court, we decline to address it here.

*Bailey,* 581 S.W.3d at 394-95 (citing *Mosley v. Tex. Health & Human Servs. Cmm'n,* 593 S.W.3d 250, 264-65 (Tex. 2019), stating that "[i]ncluded among the protected liberty interests is the right 'to engage in any of the common occupations of life.'"). Simply put, TPWD's silence on Young's due process and takings claims as to his non-breeder deer private property, all pleaded for in this case, speaks volumes.

## III.
### THE TRIAL COURT ERRED IN FAILING TO AFFORD YOUNG THE RIGHT TO REPLEAD

When Young filed suit, TPWD, along with Co-Defendant TAHC, filed pleas to the jurisdiction. (CR144). The day before the jurisdictional plea hearing was held, Young expanded upon his Original Petition,

14

(CR6), by filing his Amended Original Petition. (CR162). This caused Co-Defendant TAHC, not a party to this appeal, to seek and receive a continuance of its jurisdictional plea.[6] TPWD took a different approach, abandoning the right to file Special Exceptions and demanding to be heard immediately.

## A. *Young's Amended Petition, filed the night before the jurisdictional plea hearing, raised broad-based takings & due process claims.*

Regretting its eagerness to "be done" with Young and his demand for compliance with the Texas and federal constitutional, TPWD now hopes to backtrack, somewhat contending Young failed to plead certain non-breeder deer claims, but this argument that is belied by the record. (CR162). Within Young's Amended Petition, he alleges that his breeder deer, land, improvements, small business, and permit rights have been unconstitutionally taken without just compensation or due process.[7]

---

[6]TAHC: "I am here representing the Texas Animal Health Commission. We do have a plea to the jurisdiction set for hearing today. But because of the amended petition that we received at 4:37 yesterday afternoon, I've gone through that very carefully to be able to discern whether or not I can proceed on my plea. Mr. Mosty has done a good job of saying Defendant's actions caused these effects. And so I am not in a position where I can proceed on my plea today without things being very confusing. And so I will need to amend my plea, if necessary, and set another hearing for that." (RR6-7).
[7]Young's Amended Petition goes into great detail as to the type of claims he makes and the basis of them: "Mr. Young contends that Defendants' conduct constitutes a constitutional violation of the due process rights, both substantive and procedural, as afforded Mr. Young under the Federal and State Constitutions," citing "the Due

15

(CR163-68).

His Amended Petition describes the personal and real property in detail: "The ranch depends on approximately $200,000 in annual income from whitetail deer sales to operate." (CR167). "The value of these deer is approximately $175,000, and Mr. Young will receive nothing in addition to losing the irreplaceable genetic base that the deer herd represents." (CR168). Young's Amended Petition also incorporates by reference the expert report of Macy Ledbetter, a "highly respected game biologist attesting to the irreplaceable nature of the deer herd." (CR168).

His Amended Petition also explains how his due process rights (procedural and substantive) and right to just compensation have been violated: "The actions of the Defendants amount to a taking or inverse

---

Process Clause of the Fourteenth Amendment, no state may deprive any person of life, liberty, or property, without due process of law" and stating "Defendants have violated Mr. Young's state and federal due process guarantees"; "Mr. Young has property rights in personal and real property located on his ranch"; "The actions of the Defendants amount to a taking or inverse condemnation, in violation of the Federal and State Constitutions. The actions of Defendants' amount to an unlawful taking of Mr. Young's real and personal property in violation of Mr. Young's constitutional rights under Texas Constitution Article I, Section 19 and as also protected under the Fifth Amendment of the United States Constitution," (CR163); "Mr. Young contends that Defendants' conduct constitutes an unconstitutional violation of the due process rights, both substantive and procedural, as afforded Mr. Young under the Federal and State Constitutions. Defendants intend to kill all of Mr. Young's deer and impose restrictions on Mr. Young's land without providing any due process protections [tracking chronology of TPWD/TAHC actions from September 13, 2022 to March 18, 2024]," (CR167-69);

16

condemnation of Mr. Young's real and personal property, in violation of both Federal and State Constitutions," and describes the impacted land, improvements, and personal and real property in detail:

"Mr. Young's current ranch is high-fenced and consists of approximately 1500 acres. Within the confines of the ranch are two permitted breeding facilities, one of which is approximately 17.68 acres, and the other is approximately 12.23 acres. The breeding facilities are entirely high fenced within the confines of the main ranch, and do not share a fence with any adjoining properties. The breeding facilities contain smaller pens within the facilities which are used to sort and separate deer for breeding and other reasons. All the whitetail deer in the breeding facilities can be individually identified. The whitetail in the facilities are entirely confined, and rely entirely on Mr. Young for food, water, and care." (CR166-67).

Young's Amended Petition also explains: "As is fitting for a power-hungry government entity, TPWD is borderline boastful about the fact that it does not have to prove anything to slaughter the deer, while remaining righteously indignant that anyone would have the audacity to request an opportunity to question their unilateral decision." (CR169).

Young then breaks down some of the more troubling conduct: "Through the concerted efforts of TAHC and TPWD, Mr. Young has not been afforded an opportunity to be head on the decision to slaughter his entire unique deer herd. Defendants do not provide any opportunity to challenge its unilateral decision or even the validity of the CWD test results," (CR169-70).

Young's Amended Petition put TPWD on notice that: "Texas law guarantees that the right to bring well-established common law causes of action cannot be effectively abrogated by the legislature absent a showing that the legislative basis for the statute outweighs the denial of the constitutionally guaranteed right of redress. This provision guarantees that the legislature may not abolish a well-established common law cause of action for injuries done to one's "lands, goods, person or reputation" without providing a "reasonable substitute." (CR170).

Young's Amended Petition notified TPWD of his complaint: "Defendants violated Mr. Young's substantive due process by arbitrarily exercising their powers. Moreover, procedural due process requires that before an individual can be deprived of a property right, whether real or

18

personal, the government must afford an appropriate and meaningful opportunity to be heard." (CR171) (citations omitted). He goes further, stating, "Mr. Young's personal and real property is entitled to procedural due process protection, but the required process due was denied." (CR171).

Young's Amended Petition explains: "Mr. Young is entitled to due process protection because the deer breeder license provides Mr. Young the right to hold in captivity, breed and sell whitetail deer. The fact that Mr. Young's right to breed deer is 'possessory' in nature, as opposed to the ownership of title to the deer, however, does not change the fact that Mr. Young is entitled to due process. A bailment or leasehold interest is still an interest in property," (CR171) (citations omitted). He also notified TPWD that "[p]roperty rights are created and defined in part by state law. The term 'property right' refers to *any type of right to specific property,* including tangible, personal property. A right is 'vested' when it 'has some definitive, rather than merely potential existence.'" (CR171-72) (citations omitted).

Young's Amended Petition predicted TPWD's reliance on *Bailey,* but notified TPWD: "[P]roperty for purposes of due process is not limited

to real or personal property – it can include rights conferred by a license or privilege. Whitetail deer, whether free-ranging or captive-bred, legally are deemed wild game, held in trust for the public, subject to TPWD's jurisdiction. . . however, [t]he *Bailey* court noted '[t]hat breeder deer are not common law property does not mean that breeder deer have no legal status or protection under the law. Our holding does not affect the rights conferred by a deer breeder's permit." (CR172) (citations omitted). He also pleaded: "A deer breeder's permit confers specific statutory rights. . . . [to] engage in the business of breeding breeder deer in the immediate locality. . . and sell, transfer to another person, or hold in captivity live breeder deer for the purpose of propagation or sale. . . . [Young] is not required to have the release site inspected or approved before the release of a breeder deer from a breeding facility." (CR172-73).

Young's Amended Petition spelled out: "Rick Young has a recognized property right in his whitetail deer. These are rights that are entitled to due process protection. In addition to not being able to challenge the Kill Order, the Kill Order itself imposes restrictions that are beyond those permitted by the statute. Those also cannot be challenged. We are now more than a year and a half away from the initial

quarantine order, so there can be no logical argument that these deer now need to be killed in a matter of days. It is readily apparent that the only reason to kill these deer without a hearing is to silence any challenge by Richard M. Young." (CR173). Also, "[t]he actions taken and threatened actions in the Kill Order of entering onto Mr. Young's real property is a taking of the real and personal property. The Kill Order signed by Director Silovsky amounts to a taking of at least a portion of Mr. Young's possessions, i.e., his personal and real property. The Kill Order further exceeds the authority permitted by statute and amounts to a taking of Mr. Young's rights pursuant to his breeder permits. The requirements imposed by the governmental action has precluded Mr. Young's ability to use its personal and real property in a manner allowed under Texas and federal law and has been restricted by the laws, orders, mandates of state and federal laws. In addition, the actions of Defendants place a stigma on the value of the personal and real property, which will amount to at a minimum, a taking of Mr. Young's land (personal and real) without compensation as required by the Federal and State constitutions." (CR174).

Young's Amended Petition outlined: "Defendants knew that its

conduct, described in this petition, did or is substantially certain to cause identifiable harm to Mr. Young's personal and real property, including but not limited to Mr. Young's animals, ranch equipment, ranch land, permit, and other personal and real property."[8] Although bordering on repetition, Young's Amended Petition made sure to delineate that "Defendants' conduct was affirmative and intentional toward Mr. Young's personal and real property, resulting in the intentional taking and damaging of Mr. Young's personal and real property for public good or use or, alternatively, Defendants' conduct was affirmative and intentional so that the damage or taking of Mr. Young's personal and real property was substantially certain to occur. Defendants knew damage was substantially certain to occur to Mr. Young's personal and real property as a result of their conduct," (CR176).

---

[8](CR174-75) (citations omitted). "Defendants' conduct, detailed in the factual background/section, constitutes a taking in violation of the Federal and State Constitutions. An inverse condemnation action is a constitutional claim in which the property owner, Mr. Young here, asserts that an entity with eminent-domain power, Defendants here, intentionally performed acts that resulted in a 'taking' of the property for public use, without formally condemning the property. When 'the government takes private property without first paying for it, the owner may recover damages for inverse condemnation. A claimant seeking recovery for inverse condemnation, Mr. Young here, will show Defendants intentionally took and/or damaged Mr. Young's personal and real property for public use and/or that Defendants' conduct made substantially certain that a 'taking' would occur to either personal or real property or both." *Id.*

22

**B.** *TPWD abandoned its right to file Special Exceptions & demanded an immediate hearing on its jurisdictional challenge.*

Despite the plethora of allegations outlined below, which were verified by Young, as then Plaintiff and now Appellant, TPWD abandoned the opportunity to seek Special Exceptions and perhaps "narrow down" the breadth of Young's far-reaching Amended Petition.[9] This legal strategy required the trial court (and now this Court) to liberally construe the allegations in favor of Young. *Id.* Furthermore, TPWD's decision to pursue a non-evidentiary jurisdictional plea (and to have the newly-pleaded and broad claims heard immediately) required the trial court (and now this Court) to take as true all of Young's allegations.[10] The record shows TPWD, represented by "opposing attorneys of reasonable competence," were put on notice of Young's claims of the taking of his breeder deer, ranch land, improvements, small

---

[9]When special exceptions are not filed, courts must construe the live petition liberally in favor of the pleader. *Roark v. Allen*, 633 S.W.2d 804, 809 (Tex. 1982).

[10]In non-evidentiary jurisdictional pleas, this Court must accept as true all pleaded factual allegations and then determine if the allegations confer jurisdiction. *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003). Additionally, reviewing courts must construe the pleadings liberally in the plaintiff's favor and look to the plaintiff's intent. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

business, and permit rights without due process or just compensation.[11]

## C. *If in doubt, Young should be given the opportunity to replead.*

The Supreme Court of Texas has made clear that appeals should be decided based on substance as opposed to form. Thus, courts generally allow parties to replead during immunity-based jurisdictional challenges unless their pleadings demonstrate incurable defects. *Tex. Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 623 (Tex. 2011) ("When this Court upholds a plea to the jurisdiction on sovereign immunity grounds, we allow the plaintiff the opportunity to replead if the defect can be cured"); *City of Waco v. Kirwan*, 298 S.W.3d 621, 622 (Tex. 2009) ("The allegations found in the pleadings may either affirmatively demonstrate or negate the court's jurisdiction. If the pleadings do neither, it is an issue of pleading sufficiency and the plaintiff should be given an opportunity to amend the pleadings." (citations omitted)); *Miranda*, 133 S.W.3d at 226–

---

[11]A pleading should contain "a short statement of the cause of action sufficient to give fair notice of the claim involved ...." TEX. R. CIV. P. 47(a). "We will uphold the petition as to a cause of action that may be reasonably inferred from what is specifically stated, even if an element of the cause of action is not specifically alleged." *The Huff Energy Fund, LP v. Longview Energy Co.*, 482 S.W.3d 184, 195 (Tex. App.—San Antonio 2015), *aff'd sub nom. Longview Energy Co. v. Huff Energy Fund LP,* 533 S.W.3d 866 (Tex. 2017). "In determining whether a pleading is adequate, we examine whether an **opposing attorney of reasonable competence**, on review of the pleadings, can ascertain the nature and the basic issues of the controversy." *Id.* (emphasis added).

27 ("If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court[']s jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend.").

If there is doubt, which Young contends there is not, as to the waiver of immunity for Young's claims, this Court should comply with long-standing precedent from the Supreme Court of Texas and remand to afford Young an opportunity to replead.

## CONCLUSION & PRAYER

Young's allegations, when taken as true as required by the non-evidentiary plea to the jurisdiction filed by TPWD, demonstrate TPWD and Silovsky are not immune. This Court should reverse the dismissal order and remand the case for further proceedings. Alternatively, this Court should afford Young a chance to replead. Young also requests any relief to which he is entitled under law and equity.

Respectfully submitted,

Kimberly S. Keller
KELLER STOLARCZYK PLLC
215 W. Bandera Road
No. 114-PMB 800
Boerne, Texas 78006
Tele: 830.981.5000
/s/Kimberly S. Keller
Kimberly S. Keller
SBN: 24014182
Email: kim@kellsto.com

**APPELLANT'S COUNSEL**

## CERTIFICATE OF COMPLIANCE & SERVICE

I certify this Brief on the Merits contains 4,900 words. On March 10, 2025, I served, through this Court's e-filing server, a copy of this Brief on the Merits on those listed below:

### *Counsel for Appellees:*

KEN PAXTON, Attorney General of Texas; BRENT WEBSTER, First Asst. Attorney General; JAMES LLOYD, Deputy Attorney General for Civil Litigation; KELLIE E. BILLINGS-RAY, Chief, Environmental Protection Division, OFFICE OF THE ATTORNEY GENERAL, Environmental Protection Division, P.O. Box 12548, MC066, Austin, Texas 78711-2548

IAN LANCASTER, Asst. Attorney General, Email: ian.lancaster@oag.texas.gov

H. CARL MYERS, Asst. Attorney General, Email: carl.myers@oag.texas.gov

HEATHER COFFEE, Asst. Attorney General, Email: heather.coffee@oag.texas.gov

### *Counsel for Texas Animal Health Commission:*

KAREN L. WATKINS, Asst. Attorney General, Administrative Law Division, Office of the Attorney General, P.O. Box 12548, Austin, Texas 78711, Email: karen.watkins@oag.texas.gov

/s/Kimberly S. Keller
Kimberly S. Keller

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Kimberly Keller on behalf of Kimberly Keller
Bar No. 24014182
kim@kellsto.com
Envelope ID: 98292402
Filing Code Description: Response
Filing Description: Appellant's Reply Brief
Status as of 3/11/2025 7:06 AM CST

Associated Case Party: State Of Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Kellie E.Billings-Ray | | Kellie.Billings-Ray@oag.texas.gov | 3/10/2025 11:41:38 PM | SENT |
| Ian Lancaster | | ian.lancaster@oag.texas.gov | 3/10/2025 11:41:38 PM | SENT |
| Laura Courtney | | laura.courtney@oag.texas.gov | 3/10/2025 11:41:38 PM | SENT |
| H. CarlMyers | | Carl.Myers@oag.texas.gov | 3/10/2025 11:41:38 PM | SENT |
| James ScottMcCarley | | scott.mccarley@oag.texas.gov | 3/10/2025 11:41:38 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Karen LWatkins | | karen.watkins@oag.texas.gov | 3/10/2025 11:41:38 PM | SENT |
| C DixonMosty | | cdmosty@mostylaw.com | 3/10/2025 11:41:38 PM | SENT |
| Richard Mosty | | rmosty@mostylaw.com | 3/10/2025 11:41:38 PM | SENT |
| Jennifer SRiggs | | jriggs@r-alaw.com | 3/10/2025 11:41:38 PM | SENT |
| Kimberly SKeller | | kim@kellsto.com | 3/10/2025 11:41:38 PM | SENT |
| Clayton CUtkov | | cutkov@andrewsmyers.com | 3/10/2025 11:41:38 PM | SENT |